# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CITY OF PROVIDENCE, on behalf of itself ) \
and all others similarly situated, ) \
                                 ) \
              Plaintiff, ) \
                                 ) \
         v.                            )     CONSOLIDATED \
                                   )     C.A. No. 9795-CB \
FIRST CITIZENS BANCSHARES, INC., ) \
FRANK B. HOLDING, JR., JOHN M. ) \
ALEXANDER, JR., VICTOR E. BELL, III, ) \
HOPE HOLDING BRYANT, H.M. CRAIG, ) \
III, H. LEE DURHAM, JR., DANIEL L. ) \
HEAVNER, LUCIUS S. JONES , ROBERT ) \
E. MASON, IV, ROBERT T. NEWCOMB, ) \
JAMES M. PARKER, and RALPH K. ) \
SHELTON, ) \
                                 ) \
            Defendants.       )

## OPINION

Date Submitted:  September 4, 2014 \
Date Decided:  September 8, 2014

Christine S. Azar and Ned C. Weinberger of Labaton Sucharow LLP, Wilmington, Delaware; Christopher J. Keller, Eric J. Belfi and Michael W. Stocker of Labaton Sucharow LLP, New York, New York; Jeremy Friedman and Spencer Oster of Friedman Oster PLLC, New York, New York, Attorneys for Plaintiff.

Gregory P. Williams, John D. Hendershot and Christopher H. Lyons of Richards, Layton & Finger, P.A., Wilmington, Delaware; Sandra C. Goldstein, J. Wesley Earnhardt, and Rory A. Leraris of Cravath, Swaine & Moore LLP, New York, New York, Attorneys for Defendants Frank B. Holding, Jr., John M. Alexander, Jr., Victor E. Bell, III, Hope Holding Bryant, H.M. Craig, III, H. Lee Durham, Jr., Daniel L. Heavner, Lucius S. Jones, Robert E. Mason, IV, Robert T. Newcomb, James M. Parker, Ralph K. Shelton and Nominal Defendant/Defendant First Citizens Bancshares, Inc.

Donald H. Tucker, Jr. and Clifton L. Brinson of Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., Raleigh, North Carolina, Attorneys for Defendants John M. Alexander, Jr., Victor E. Bell, III, H.M. Craig, III, H. Lee Durham, Jr., Daniel L. Heavner, Lucius S. Jones, Robert E. Mason, IV, Robert T. Newcomb, and Ralph K. Shelton.

**BOUCHARD, C.**

## I. INTRODUCTION

This action involves a challenge by plaintiff City of Providence ("Providence") to a forum selection bylaw (the "Forum Selection Bylaw") adopted by defendant First Citizens BancShares, Inc., ("FC North"), a bank holding company incorporated in Delaware and based in Raleigh, North Carolina. The Forum Selection Bylaw is virtually identical to the ones that then-Chancellor, now Chief Justice, Strine found to be facially valid in *Boilermakers Local 154 Retirement Fund v. Chevron Corporation* ("*Chevron*")[1] except in one respect: it selects as the forum the United States District Court for the Eastern District of North Carolina, or, if that court lacks jurisdiction, any North Carolina state court with jurisdiction, instead of the state or federal courts of Delaware.

FC North adopted the Forum Selection Bylaw the same day it announced it had entered into a merger agreement to acquire First Citizens Bancorporation, Inc. ("FC South"), a bank holding company incorporated and based in South Carolina. Providence filed two separate complaints that have since been consolidated into this action. The first complaint challenges the facial validity of the Forum Selection Bylaw and asserts a claim for breach of fiduciary duty in connection with its adoption. The second complaint asserts claims against the FC North board of directors concerning the proposed merger.

In this opinion, I conclude that Providence has not stated a claim as to the facial validity of the Forum Selection Bylaw. This conclusion is compelled by the logic and reasoning of the *Chevron* decision. I also conclude that Providence has failed to state a

---

[1] 73 A.3d 934 (Del. Ch. 2013).

claim for breach of fiduciary duty in connection with the adoption of the Forum Selection Bylaw and, further, that Providence has failed to demonstrate that it would be unreasonable, unjust, or inequitable to enforce the Forum Selection Bylaw here. Therefore, I grant the defendants' motions to dismiss both of the complaints in this action.

## II.    BACKGROUND[2]

FC North is a Delaware corporation that is headquartered in Raleigh, North Carolina. FC North is a holding company for First-Citizens Bank & Trust Company, which operates in seventeen states[3] but has most of its banking operations—over 70% of its total deposits and over 60% of its branches—in North Carolina.[4] FC North has two classes of common stock: Class A shares that are entitled to one vote per share and Class B shares that are entitled to sixteen votes per share. Providence is a holder of Class A shares.

FC South is a bank holding company incorporated and based in South Carolina. FC South has voting and non-voting common stock.

---

[2] Unless otherwise noted, the facts recited in this Opinion are based on the well-pled allegations of the relevant complaint.

[3] Bylaw Compl. ¶ 9.

[4] First Citizens BancShares, Inc., Annual Report (Form 10-K), at 4 (Feb. 26, 2014). I may consider these publicly available facts at the motion to dismiss stage because they are not subject to reasonable dispute. *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170-71 (Del. 2006).

Both FC North and FC South are allegedly controlled by the members and affiliates of the Holding family (the "Holding Group"). The Holding Group beneficially owns shares representing approximately 52.2% of the votes of FC North and approximately 48.5% of the votes of FC South.[5] As between the two, the Holding Group's economic interests are allegedly greater in FC South than FC North.

On June 10, 2014, the FC North board adopted and approved Amended and Restated Bylaws, which revised numerous aspects of FC North's bylaws and added the Forum Selection Bylaw.[6] That same day, FC North announced that it had entered into a merger agreement to acquire FC South for a mix of stock and cash. The aggregate value of the proposed transaction is alleged to be between $636.9 million and $676.4 million.

On June 19, 2014, Providence filed a complaint (the "Bylaw Complaint") against FC North and the twelve members of its board of directors (the "Board") challenging the Forum Selection Bylaw as invalid as a matter of Delaware law or public policy (Count I) and seeking a declaratory judgment that the Forum Section Bylaw is invalid or, alternatively, that this Court "may nonetheless exercise jurisdiction over this action and

---

[5] Bylaw Compl. ¶¶ 24, 26; Merger Compl. ¶¶ 32, 36. Providence further alleges that, when the holdings of other entities in which members of the Holding family are stockholders and serve as directors and/or officers are included, these voting percentages increase to approximately 58.2% of votes of FC North and 60.8% of FC South. Merger Compl. ¶¶ 34, 38.

[6] Bylaw Compl. ¶ 35; *see also* First Citizens BancShares, Inc., Current Report (Form 8-K), at Item 5.03 (June 10, 2014) (summarizing material changes made in FC North's Amended and Restated Bylaws).

3

any action arising out of or relating to the [proposed merger]" (Count III).[7] In the Bylaw Complaint, Providence also asserts that the adoption of the Forum Selection Bylaw was *ultra vires* and a breach of fiduciary duty (Count II).

On July 10, 2014, defendants moved to dismiss the Bylaw Complaint in its entirety under Court of Chancery Rule 12(b)(6) for failure to state a claim. They also moved to dismiss Count II under Rule 12(b)(3) for improper venue.

On August 1, 2014, Providence filed its second complaint (the "Merger Complaint"). In the Merger Complaint, Providence asserts various class and derivative claims for breach of fiduciary duty against the Board, as well as for breach of fiduciary duty as a controlling stockholder and for unjust enrichment against certain directors in their capacity as members of the Holding Group. In essence, Providence contends that the Holding Group, through its controlling interest, unfairly forced FC North to overpay for FC South to its own benefit and to the dilution of FC North's minority stockholders.[8]

On August 4, 2014, the defendants moved to dismiss the Merger Complaint under Rule 12(b)(3) for improper venue. On August 7, 2014, the two cases were consolidated. Providence has not filed a consolidated complaint or designated an operative complaint. Thus, within this consolidated action, there are two complaints containing discrete claims, as described above.

---

[7] Bylaw Compl. ¶ 69.

[8] There is no claim challenging the Forum Selection Bylaw in the Merger Complaint. Rather, Providence's allegations in the Merger Complaint about the Forum Selection Bylaw simply rehash its allegations in the Bylaw Complaint. *See* Merger Compl. ¶¶ 12, 100-03, 114.

4

On the evening of August 28, Providence filed a motion to expedite and for a preliminary injunction to enjoin a September 16 vote by FC North stockholders on several proposals related to the proposed merger, including a charter amendment to increase the number of authorized shares.[9] The parties do not dispute that the Forum Selection Bylaw purports to govern the claims Providence asserts in the Merger Complaint.[10] Were the Forum Selection Bylaw valid, then this Court would not be the proper venue to hear Providence's request for injunctive relief.

As to the timing between the preliminary injunction motion and the pending motions to dismiss, the parties previously stipulated that the motions to dismiss would be heard on or as soon as possible after September 3. They stipulated further that the validity of the Forum Selection Bylaw, including whether it may bar the claims Providence asserts in the Merger Complaint, should be resolved before any other substantive issues.[11]

---

[9] Providence was aware of the September 16 stockholder meeting since at least August 6, 2014, when FC North filed an amendment to its registration statement with the Securities and Exchange Commission, but it did not file its motion for expedition until twenty-two days later (shortly before the Labor Day weekend) and just nineteen days before the date of the meeting. The timing of its filing displays a glaring lack of alacrity with which it seeks to act as class counsel.

[10] The claims against the members of the Board in their capacity as directors of FC North plainly fall within part (2) of the Forum Selection Bylaw, and, to the extent they are derivative, part (1). *See* n. 18, below. Providence did not argue that its claims against members of the Board in their capacity as members of the Holding Group (an alleged controlling stockholder) are outside the ambit of the Forum Selection Bylaw.

[11] Stip. Regarding Consolidation and Briefing on Defs.' Mots. to Dismiss ¶ 1 (Aug. 7, 2014) ("The Parties agree that the issue of the validity of the Bylaw, including as applied to the Merger Litigation, should be decided before any other substantive issue raised in

In accordance with the parties' own stipulation, before I consider the merits of Providence's motion to expedite to schedule a hearing on its preliminary injunction motion, I will address the potentially dispositive motions regarding the Forum Selection Bylaw.

## III.   LEGAL ANALYSIS

### A.   The Standard of Review under Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim must be denied unless, assuming the well-pled allegations to be true and viewing all reasonable inferences from those allegations in the plaintiff's favor, I do not find there to be a "reasonably conceivable set of circumstances" in which the plaintiff could recover.[12]  In this analysis, I do not accept as true any "conclusory allegations unsupported by specific facts."[13]

### B.   The Statutory Framework for Corporate Bylaws

"[T]he bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers, and stockholders formed within the statutory framework of the [Delaware General Corporation Law (the "DGCL")]."[14]  Under 8 *Del.*

---

the Merger Litigation is decided by the Court, and that Defendants are not required to submit an opposition to any expedition or injunction motion submitted by Plaintiff before the Court rules on Defendants' motions to dismiss[.]").

[12] *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[13] *Gantler v. Stephens*, 965 A.2d 695, 704 (Del. 2009).

[14] *Chevron*, 73 A.3d at 939.

6

*C.* § 109(a), a corporation may "confer the power to adopt, amend or repeal bylaws upon the directors." A corporation's bylaws, under 8 *Del. C.* § 109(b), "may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees." I evaluate the validity of the Forum Selection Bylaw, as a bylaw of a Delaware corporation, under Delaware law.[15]

### C. FC North's Forum Selection Bylaw is Facially Valid

FC North's charter grants the power to amend the bylaws to the Board.[16] *Chevron* explains the expectation that investors in corporations like FC North should therefore have: "[s]tockholders are on notice that, as to those subjects that are subject of regulation by bylaw under 8 *Del. C.* § 109(b), the board itself may act unilaterally to adopt bylaws addressing those subjects."[17]

In all but two respects, the Forum Selection Bylaw is functionally identical to the bylaws of Chevron Corporation and FedEx Corporation challenged in *Chevron*. All three seek to regulate the proper forum for lawsuits against the corporation and its directors,

---

[15] *See id.* at 938.

[16] Restated Certificate of Incorporation of First Citizens BancShares, Inc., art. V ("[T]he Board of Directors shall have the power to make, adopt, alter, amend and repeal, from time to time, the Bylaws of the corporation, subject to the rights of the shareholders entitled to vote with respect thereto to alter or repeal Bylaws made by the Board of Directors."). I take judicial notice of this provision of FC North's charter because Providence does not contest its existence or authenticity. *See Malpiede v. Townson*, 780 A.2d 1075, 1090-92 (Del. 2001).

[17] *Chevron*, 73 A.3d at 955-56.

7

officers, and employees asserting (i) any derivative claim; (ii) any claim for breach of fiduciary duty owed by a director, officer, or employee of the corporation; (iii) any claim arising under any provision of the DGCL; and (iv) any claim governed by the internal affairs doctrine.[18] The two distinctions are as follows: first, whereas the boards of Chevron and FedEx selected Delaware courts as their exclusive forums, the Board of FC North selected North Carolina courts; and second, FC North's Forum Selection Bylaw, unlike that of Chevron or FedEx, is applicable only "to the fullest extent permitted by law." These distinctions frame an issue of first impression: whether the board of a Delaware corporation may adopt a bylaw that designates an exclusive forum other than Delaware for intra-corporate disputes.

---

[18] FC North's Forum Selection Bylaw provides:

> Exclusive Forum for Certain Disputes: Unless the corporation consents in writing to the selection of an alternative forum, the United States District Court for the Eastern District of North Carolina or, if such court lacks jurisdiction, any North Carolina state court that has jurisdiction, shall, to the fullest extent permitted by law, be the sole and exclusive forum for (1) any derivative action or proceeding brought on behalf of the corporation, (2) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the corporation to the corporation or the corporation's shareholders, (3) any action asserting a claim arising pursuant to any provision of the General Corporation Law of the State of Delaware, and (4) any action asserting a claim governed by the internal affairs doctrine. Any person or entity purchasing or otherwise acquiring or holding any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 8.

Bylaw Compl. ¶ 37.

After carefully interpreting the relevant Delaware statutes and case law implicated by board-adopted forum selection bylaws, then-Chancellor Strine concluded in *Chevron* that these types of bylaws are statutorily and contractually valid under Delaware law:

> As a matter of easy linguistics [in interpreting 8 *Del. C.* § 109(b) for the proper scope of corporate bylaws], the forum selection bylaws address the "rights" of the stockholders, because they regulate where stockholders can exercise their right to bring certain internal affairs claims against the corporation and its directors and officers. . . . That is, because the forum selection bylaws address internal affairs claims, the subject matter of the actions the bylaws govern relates quintessentially to "the corporation's business, the conduct of its affairs, and the rights of its stockholders [*qua* stockholders]."
>
> . . .
>
> In an unbroken line of decisions dating back several generations, our Supreme Court has made clear that the bylaws constitute a binding part of the contract between a Delaware corporation and its stockholders. . . . [A] change by the board [to the bylaws pursuant to 8 *Del. C.* § 109(a)] is not extra-contractual simply because the board acts unilaterally; rather it is the kind of change that the overarching statutory and contractual regime the stockholders buy into explicitly allows the board to make on its own. In other words, the Chevron and FedEx stockholders have assented to a contractual framework established by the DGCL and the certificates of incorporation that explicitly recognizes that stockholders will be bound by bylaws adopted unilaterally by their boards. Under that clear contractual framework, the stockholders assent to not having to assent to board-adopted bylaws.[19]

In my opinion, the same analysis of Delaware law outlined in *Chevron* validates the Forum Selection Bylaw here. Although then-Chancellor Strine in *Chevron* commented that Delaware, as the state of incorporation, "was the most obviously reasonable forum" for internal affairs cases because those "cases will be decided in the courts whose

---

[19] *Chevron*, 73 A.3d at 950-51, 955-56.

Supreme Court has the authoritative final say as to what the governing law means,"[20] nothing in the text or reasoning of *Chevron* can be said to prohibit directors of a Delaware corporation from designating an exclusive forum other than Delaware in its bylaws. [21] Thus, the fact that the Board selected the federal and state courts of North Carolina—the second most obviously reasonable forum given that FC North is headquartered and has most of its operations there—rather than those of Delaware as the exclusive forums for intra-corporate disputes does not, in my view, call into question the facial validity of the Forum Selection Bylaw.[22]

Providence also challenges the facial validity of the Forum Selection Bylaw on the theory that it improperly deprives this Court of the "exclusive jurisdiction" vested upon it by the General Assembly under various provisions of the DGCL. For example, Providence argues that because 8 *Del. C.* § 203(e) vests this Court with "exclusive jurisdiction to hear and determine all matters with respect to [that] section [*i.e.*, 8 *Del. C.* § 203]," the Forum Selection Bylaw must be contrary to Delaware law and public policy

---

[20] *Id.* at 953.

[21] *See also In re IBP, Inc. S'holders Litig.*, 2001 WL 406292, at *9 n.21 (Del. Ch. Apr. 18, 2001) ("Delaware courts have not hesitated to enforce forum selection clauses that operate to divest the courts of this State of the power they would otherwise have to hear a dispute.").

[22] Nothing in this Opinion should be construed as taking any position on the wisdom of selecting the forums designated in the Forum Selection Bylaw. *See CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 240 (Del. 2008) ("[W]e express no view on whether the Bylaw as currently drafted, would create a better governance scheme from a policy standpoint. We decide only what is, and is not, legally permitted under the DGCL.").

because it would improperly strip this Court of that jurisdiction.[23] In addition, Providence contends that the Board's designation of an exclusive forum other than this Court was unlawful because it has a substantive right to assert in this Court certain claims arising under 8 *Del. C.* § 111 and other provisions of the DGCL.

As an initial matter, I question Providence's interpretation of these provisions of the DGCL. Vice Chancellor Laster recently, and quite thoroughly, addressed a similar jurisdictional question and concluded that a grant by the General Assembly of "exclusive" jurisdiction to this Court for claims arising under a particular statute does not preclude a party from asserting a claim arising under that statute in a different jurisdiction.[24] He further concluded that any attempt by the General Assembly to bestow,

---

[23] Providence raises this or similar arguments with respect to a litany of other DGCL provisions that vest jurisdiction in the Court of Chancery, some of which use the phrase "exclusive jurisdiction" and others of which do not: 8 *Del. C.* §§ 168, 205, 211, 219, 220, 223, 225, 226, 227, 231, 262, 283, 291, 322. The primary case upon which Providence relies, *Datapoint Corp. v. Plaza Sec. Co.*, 496 A.2d 1031 (Del. 1985), is clearly distinguishable. In *Datapoint*, the Delaware Supreme Court affirmed the issuance of a preliminary injunction enjoining the board's ability to enforce a bylaw that regulated the effective time of action taken by stockholder written consent because the bylaw was "clearly in conflict with the letter and intent" of 8 *Del. C.* § 228. *Id.* at 1035-36. Nothing in *Datapoint* concerns the jurisdiction of this Court or controls the validity of a forum selection bylaw.

[24] *See IMO Daniel Kloiber Dynasty Trust*, — A.3d —, 2014 WL 4071326, at *13 (Del. Ch. Aug. 6, 2014) ("When a Delaware state statute assigns exclusive jurisdiction to a particular Delaware court, the statute is allocating jurisdiction among the Delaware courts. The state is *not* making a claim against the world that no court outside of Delaware can exercise jurisdiction over that type of case. Nor, as a matter of power within our federal republic, could the State of Delaware arrogate that authority to itself. . . . In my view, Delaware also cannot unilaterally preclude a sister state from hearing claims under its laws."); *see also Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999) ("For the purpose of designating a more convenient forum, we find no reason

11

in Providence's words, a "substantive right" to bring a claim only in this Court would conflict with the Supremacy Clause of the United States Constitution and federal diversity jurisdiction.[25]

I need not decide these questions, however. In *Chevron,* then-Chancellor Strine declined to resolve each of the plaintiffs' "hypothetical as-applied challenges" in finding the Chevron and FedEx forum bylaws to be facially valid.[26] Similarly, it is not necessary for me to resolve Providence's "exclusive jurisdiction" or "substantive right" arguments to determine the facial validity of the Forum Selection Bylaw because they are purely hypothetical. Providence has not asserted a claim in either of its complaints under any of the statutes it has identified.

Moreover, the Forum Selection Bylaw, by its terms, is only enforceable "to the fullest extent permitted by law." This qualification appears to carve out from the ambit of the Forum Selection Bylaw a claim for relief, if any, that may be asserted only in the Court of Chancery. Here, all of the claims pled in the Merger Complaint (*i.e.*, breach of fiduciary duty and unjust enrichment) are Delaware common law claims that can be (and frequently have been) asserted in non-Delaware forums, including North Carolina courts.

---

why the members [of an LLC] cannot alter the default jurisdictional provisions of the statute and contract away their right to file suit in Delaware").

[25] *See Kloiber*, 2014 WL 4071326, at *13.

[26] *See Chevron*, 73 A.3d at 958-63; *see also XL Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014) ("Delaware courts do not render advisory or hypothetical opinions.").

For the foregoing reasons, I conclude that the Forum Selection Bylaw is facially valid as a matter of law and, thus, that Counts I and III of the Bylaw Complaint should be dismissed for failure to state a claim upon which relief may be granted.

**D.**     **Providence Has Failed to State a Claim for Breach of Fiduciary Duty in Connection with the Adoption of the Forum Selection Bylaw**

Count II of the Bylaw Complaint asserts that "[t]he self-interested adoption of the Forum Selection Bylaw" was a breach of fiduciary duty. In this regard, Providence argues that the Board's adoption of the Forum Selection Bylaw was part and parcel of its self-interested, disloyal conduct in approving the merger with FC South. It also implies that the Board selected courts in North Carolina (as opposed to courts in Delaware or any other State) because the directors thought they might receive favorable treatment there. In support of its position, Providence cites two allegations of the Bylaw Complaint: (i) the Forum Selection Bylaw "was motivated by a desire to protect the interests of the individual members of the Board and other affiliates of the Holding Group, including officers of the Company"; and (ii) the Board adopted the Forum Selection Bylaw "to insulate itself from the jurisdiction of Delaware courts."

These allegations are wholly conclusory. They provide no basis to infer, even under the reasonable conceivability standard, that the Forum Selection Bylaw was the product of a breach of fiduciary duty.

The Forum Selection Bylaw plainly does not insulate the Board's approval of the proposed merger from judicial review. It simply requires that such review take place in a court based in North Carolina. In that regard, Providence has not provided any well-pled

13

facts to call into question the integrity of the federal and state courts of North Carolina or to explain how the defendants are advancing their "self-interests" by having claims arising from their approval of the proposed merger adjudicated in those courts as opposed to the courts of Delaware. Nor has Providence alleged that the relevant federal or state courts in North Carolina would not have jurisdiction over FC North, the Board, or the company's officers and employees.[27] Given the absence of any such facts and the wholly conclusory allegations upon which Count II of the Bylaw Complaint is predicated, Providence has failed to rebut the presumption of the business judgment standard of review that attaches to the Board's adoption of the Forum Selection Bylaw[28] or to show that the Board's selection of North Carolina as the exclusive forum was irrational.

Accordingly, Count II of the Bylaw Complaint fails to state a claim upon which relief may be granted.

### E. The Standard of Review under Rule 12(b)(3)

A stockholder plaintiff's claims that are governed by a valid forum selection bylaw designating an exclusive jurisdiction other than this Court may be dismissed under

---

[27] Separately, the defendants represented that FC North's directors and executive officers all live in North Carolina. Defs.' Reply Br. 3, 7.

[28] *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

14

Rule 12(b)(3) for improper venue.[29]  The bylaw must be valid on its face and as-applied. I have already concluded that the Forum Selection Bylaw is facially valid.

## F.    FC North's Forum Selection Bylaw is Valid As-Applied Here

The remaining question is whether the Forum Selection Bylaw is valid as-applied. *Chevron* did not reach this question because it only considered the facial validity of Chevron's and FedEx's forum selection bylaws.[30]  Here, by contrast, FC North and the Board request that I enforce the Forum Selection Bylaw to dismiss the Merger Complaint.  *Chevron* is nonetheless instructive on the proper framework to consider the defendants' motion to dismiss for improper venue.[31]

My decision on whether the Forum Selection Bylaw is valid as-applied to Providence's remaining claims is guided by the United States Supreme Court's analysis in *The Bremen v. Zapata Off-Shore Company*,[32] which the Delaware Supreme Court

---

[29] *See, e.g.*, *Baker v. Impact Hldg., Inc.*, 2010 WL 1931032, at *2 (Del. Ch. May 13, 2010) ("The proper procedural rubric for addressing a motion to dismiss based on a forum selection clause is found under Rule 12(b)(3), improper venue.").

[30] *See Chevron*, 73 A.3d at 940 ("In an attempt to defeat the defendants' motion, the plaintiffs have conjured up an array of purely hypothetical situations in which they say that the bylaws of Chevron and FedEx might operate unreasonably. . . . [I]t would be imprudent and inappropriate to address these hypotheticals in the absence of a genuine controversy with concrete facts.").

[31] *See id.* at 959 ("[T]he time for a plaintiff to make an as-applied challenge to the forum selection clauses is when the plaintiff wishes to, and does, file a lawsuit outside the chosen forum.  At that time, a court will have a concrete factual situation against which to apply the *Bremen* test, or analyze, *à la Schnell*, whether the directors' use of the bylaws is a breach of fiduciary duty.").

[32] 407 U.S. 1 (1972).

15

explicitly adopted in *Ingres Corporation v. CA, Inc.*[33] *Chevron* cogently articulated the lessons of this case law:

> In *Bremen*, the Court held that forum selection clauses are valid provided that they are "unaffected by fraud, undue influence, or overweening bargaining power," and that the provisions "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable.'" In *Ingres*, our Supreme Court explicitly adopted this ruling, and held not only that forum selection clauses are presumptively enforceable, but also that such clauses are subject to as-applied review under *Bremen* in real-world situations to ensure that they are not used "unreasonabl[y] and unjust[ly]."[34]

An additional lens through which the enforceability of the Forum Selection Bylaw may be reviewed is under *Schnell v. Chris-Craft Industries, Inc.*[35] and its teaching that "inequitable action does not become permissible simply because it is legally possible."[36]

Providence asserts several arguments in opposition to the defendants' invocation of the Forum Selection Bylaw to dismiss the Merger Complaint. These arguments can be generalized as raising three as-applied challenges under *Bremen* and, to a lesser extent, *Schnell*. First, Providence asserts that Delaware has an overriding interest in resolving what it describes as the "novel and substantial" issues raised in the Merger Complaint.

---

[33] 8 A.3d 1143, 1145 (Del. 2010).

[34] *Chevron*, 73 A.3d at 957 (citing *Bremen*, 407 U.S. at 10; *Ingres*, 8 A.3d at 1146); *see also Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013) (same).

[35] 285 A.2d 437 (Del. 1971).

[36] *Id.* at 439; *see also Black v. Hollinger Int'l Inc.*, 872 A.2d 559, 564 (Del. 2005) (affirming then-Vice Chancellor Strine's decision that found certain bylaw amendments adopted by a controlling stock to be "invalid in equity and of no force and effect, because they had been adopted for an inequitable purpose and had an inequitable effect").

16

Second, Providence contends that the timing of the Board's adoption of the Forum Selection Bylaw—simultaneous with the adoption of the merger agreement—renders applying the bylaw to dismiss the Merger Complaint unreasonable. Third, Providence argues that the circumstances here, in which the Forum Selection Bylaw cannot be repealed without the support of FC North's majority stockholder, the Holding Group, make enforcement of the bylaw unjust. Providence does not allege fraud or overreaching on behalf of the Board in adopting the Forum Selection Bylaw.

### 1. Delaware's Purported Interest in the Claims Raised in the Merger Complaint

Providence describes its challenge to the merger between FC North and FC South as a "novel" equity dilution claim under the framework of *Gentile v. Rossette*.[37] It then draws on case law resolving disputes involving multi-forum litigation (primarily under the standard of *McWane Cast Iron Pipe Corporation v. McDowell-Wellman Engineering Company*[38] or on *forum non conveniens* grounds) to assert that Delaware has strong public policy in favor of this Court deciding novel questions of Delaware corporate law

---

[37] 906 A.2d 91 (Del. 2006). In *Gentile*, the Delaware Supreme Court concluded that a stockholder plaintiff may have direct and derivative standing to assert a breach of fiduciary duty claim against a controlling stockholder where "(1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders." *Id.* at 100.

[38] 263 A.2d 281 (Del. 1970).

17

uniformly and authoritatively.[39] Although considerations of Delaware' interest in having the Court of Chancery resolve breach of fiduciary duty claims properly may be considered in a *McWane* or *forum non conveniens* analysis, that case law is inapposite to the circumstances here, where there *is* a designated forum for resolving intra-corporate disputes: a North Carolina court. The whole point of adopting the Forum Selection Bylaw was to solve the issue of multi-forum litigation such that this Court (and courts in other jurisdictions) would not need to divine the appropriate forum.[40]

The DGCL does not express any preference of the General Assembly one way or the other on whether it is permissible for boards of directors to require stockholders to litigate intra-corporate disputes in the courts of foreign jurisdictions. In contrast, in 2000, the General Assembly explicitly amended § 18-109(d) of the Limited Liability Company Act to prevent a Delaware LLC from mandating a foreign court as the exclusive forum for intra-entity disputes asserted by its non-manager members, the LLC analogue to stockholders.[41] This dichotomy led this Court to conclude, when determining the validity

---

[39] *See, e.g.*, *Ryan v. Gifford*, 918 A.2d 341, 349-51 (Del. Ch. 2007); *In re Topps Co. S'holders Litig.*, 924 A.2d 951, 956-61 (Del. Ch. 2007); *In re Chambers Dev. Co., Inc. S'holders Litig.*, 1993 WL 179335, at *3 (Del. Ch. May 20, 1993).

[40] *See Chevron*, 73 A.3d at 952 ("[F]orum selection bylaws are designed to bring order to what . . . boards . . . say they perceive to be a chaotic filing of duplicative and inefficient derivative and corporate suits against the directors and the corporations.").

[41] 6 *Del. C.* § 18-109(d). ("Except by agreeing to arbitrate any arbitrable matter in a specified jurisdiction or in the State of Delaware, a member who is not a manager may not waive its right to maintain a legal action or proceeding in the courts of the State of Delaware with respect to matters relating to the organization or internal affairs of a limited liability company.").

18

of a foreign forum selection clause in a stockholder agreement, that "Delaware does not have an overarching public policy that prevents the stockholders of Delaware corporations from agreeing to exclusive foreign jurisdiction of any matter involving the internal affairs of such entities."[42] Similarly here, I do not discern an overarching public policy of this State that prevents boards of directors of Delaware corporations from adopting bylaws to require stockholders to litigate intra-corporate disputes in a foreign jurisdiction.

Providence also overstates the novelty raised by its claims in the Merger Complaint. At its core, the Merger Complaint alleges that the Board of FC North, under the control of the Holding Group, overpaid for FC South because the Holding Group has greater economic interests in FC South than FC North. These claims constitute self-dealing or waste claims governed by well-established principles of Delaware law. *Gentile* and its progeny may be implicated in determining whether such claims are direct, derivative, or both in nature. The issues of Delaware law involved in that inquiry, however, are far from the type of unprecedented claims that might theoretically[43]

---

[42] *Baker*, 2010 WL 1931032, at *2.

[43] *Accord In re Revlon, Inc. S'holders Litig.*, 990 A.2d 940, 961 n.8 (Del. Ch. 2010) ("I can envision that the Delaware courts would retain some measure of inherent residual authority so that entities created under the authority of Delaware law could not wholly exempt themselves from Delaware oversight.").

19

outweigh Delaware's substantial interest in enforcing a facially valid forum selection bylaw designating a federal or state court outside Delaware as the exclusive forum.[44]

FC North is based in North Carolina, most of its deposits are held there, most of its branches are located there, no contention is made that jurisdiction cannot be obtained there over FC North's directors, and no legitimate contention can be made that complete relief cannot be afforded there. Under these circumstances, and given the lack of any Delaware public policy mandating that claims of the nature asserted in the Merger Complaint be litigated in Delaware, I conclude it is not unreasonable to apply the Forum Selection Bylaw in this case.

### 2. The Timing of the Adoption of the Forum Selection Bylaw

Providence argues that "enforcing the Forum Selection Bylaw against [it] would be unjust because the Board's adoption of the Bylaw, which occurred simultaneously with the announcement of the unfair [proposed merger], goes well beyond [its] reasonable expectations."[45] I disagree. As explained in *Chevron*, "an essential part of the contract stockholders [like Providence] assent to when they buy stock in [FC North] is one that presupposes the board's authority to adopt binding bylaws consistent with 8 *Del. C.* § 109."[46] Thus, the reasonable expectation a stockholder of FC North should have is

---

[44] If a genuinely novel issue of Delaware law were to arise, the Delaware Constitution expressly provides for a United States District Court or the highest appellate court of any state, among other tribunals, to certify questions to the Delaware Supreme Court. *See* Del. Const. art. IV, § 11(8); *see also* Supr. Ct. R. 41(a)(ii).

[45] Pl.'s Ans. Br. at 30.

[46] *Chevron*, 73 A.3d at 940.

20

that its Board may adopt a forum selection bylaw that, subject to challenge on an as-applied basis, designates a court outside Delaware as the exclusive forum for intra-corporate disputes.

Providence also argues it would be inequitable to apply the Forum Selection Bylaw under *Schnell* because it was adopted in connection with a self-interested transaction that disproportionately benefits an alleged controlling stockholder.[47] This is a reprise of Count II of the Bylaw Complaint, discussed above, and fails for the same reason: Providence has not alleged any well-pled facts calling into question the integrity of the federal or state courts of North Carolina or explaining how the defendants have advanced their "self-interests" by having the claims in the Merger Complaint adjudicated in those courts instead of a Delaware court. The conduct of the FC North Board in approving the proposed merger will not be absolved from judicial review; that review simply must occur in a North Carolina court.

In sum, the Forum Selection Bylaw merely regulates "*where* stockholders may file suit, not *whether* the stockholder may file suit or the kind of remedy that the stockholder may obtain."[48] That the Board adopted it on an allegedly "cloudy" day when it entered into the merger agreement with FC South rather than on a "clear" day is immaterial given the lack of any well-pled allegations in either of Providence's demonstrating any impropriety in this timing.

---

[47] Pl.'s Ans. Br. 34-36.

[48] *Chevron*, 73 A.3d at 952.

Separately, Providence's contention that the Forum Selection Bylaw cannot be enforced because it seeks to regulate the forum for asserting claims that arose before it was adopted is unpersuasive. This argument is simply a dressed-up version of the "vested right" doctrine that was soundly rejected in *Kidsco Inc. v. Dinsmore*[49] and *Chevron*.[50] This too is not a basis to not apply the Forum Selection Bylaw here.

### 3. The Alleged Inability to Repeal the Forum Selection Bylaw

In its final *Bremen* argument, Providence argues it is unjust to apply the Forum Selection Bylaw here because the stockholders of FC North effectively lack the ability to repeal it since FC North is controlled by the Holding Group. This issue was not addressed in *Chevron* because neither of the corporations whose forum selection bylaw was being challenged there had a controlling stockholder.

Then-Chancellor Strine noted in *Chevron* that a board-adopted forum selection bylaw, much like any board-adopted bylaw, is "subject . . . to the most direct form of attack by stockholders who do not favor them: stockholders can simply repeal them by a majority vote."[51] His discussion of the relationship between the ability of a board of directors and the ability of stockholders to amend a corporation's bylaws appears to

---

[49] 674 A.2d 483 (Del. Ch. 1995), *aff'd*, 670 A.2d 1338 (TABLE).

[50] *See Chevron*, 73 A.3d at 955 (quoting *Kidsco*, 674 A.2d at 492) ("As then-Vice Chancellor, now [former-]Justice, Jacobs explained in the *Kidsco* case, under Delaware law, where a corporation's articles or bylaws 'put all on notice that the by-laws may be amended at any time, no vested rights can arise that would contractually prohibit an amendment.'").

[51] *Chevron*, 73 A.3d at 954 (citing 8 *Del. C.* § 109(a)).

consider the statutory framework in the abstract. I do not interpret either the DGCL or *Chevron* to mandate that a board-adopted forum selection bylaw can be applied only if it is realistically possible that stockholders may repeal it. In other words, that there is currently a controlling stockholder who may favor a board-adopted forum selection bylaw, as appears to be the case with FC North, does not make it *per se* unreasonable to enforce the bylaw. For me to conclude otherwise would, as the defendants note, "be tantamount to rendering questionable all board-adopted bylaws of controlled corporations."[52]

Reaching this conclusion does not leave minority stockholders of controlled corporations without recourse. *Schnell* is a powerful lens through which this Court evaluates the as-applied validity of forum selection bylaws. In the appropriate case, a foreign forum selection bylaw may not withstand *Schnell* scrutiny. For reasons previously discussed, however, Providence has not convinced me that it would be inequitable here to require Providence to litigate the claims asserted in the Merger Complaint in the United States District Court for the Eastern District of North Carolina or in a North Carolina state court.

\* \* \* \* \*

For the reasons discussed above, I conclude that it is not unreasonable or unjust under *Bremen* or inequitable under *Schnell* to enforce the Forum Selection Bylaw here. FC North and the majority of its operations are based in North Carolina. It stands to

---

[52] Defs.' Reply Br. 21.

reason, under the presumption of Delaware law that directors will act in good faith,[53] that the Board determined that the most efficient courts in which to defend against the claims governed by the Forum Selection Bylaw, such as those raised in the Merger Complaint, are the federal and state courts in North Carolina. Under Delaware law and FC North's governing documents, the Board was entitled to designate those courts for this purpose. Providence has not sufficiently alleged or argued any grounds that give me pause in enforcing the Forum Selection Bylaw, and, accordingly, I will enforce it.

Further supporting my conclusion are important interests of judicial comity. If Delaware corporations are to expect, after *Chevron*, that foreign courts will enforce valid bylaws that designate Delaware as the exclusive forum for intra-corporate disputes,[54] then, as a matter of comity, so too should this Court enforce a Delaware corporation's bylaw that does not designate Delaware as the exclusive forum. In my opinion, to conclude otherwise would stray too far from the harmony that fundamental principles of judicial comity seek to maintain.

---

[53] *See Aronson*, 473 A.2d at 812.

[54] *See, e.g.*, *Groen v. Safeway Inc.*, No. RG14716641 (Cal. Super. Ct. May 14, 2014); *Miller v. Beam, Inc.*, No. 2014 CH 00932 (Ill. Cir. Ct. Mar. 5, 2014); *Hemg Inc. v. Aspen Univ.*, 2013 WL 5958388 (N.Y. Sup. Ct. Nov. 14, 2013); *contra Roberts v. TriQuint SemiConductor, Inc.*, No. 1402-02441 (Or. Cir. Ct. Aug. 14 2014); *Galaviz v. Berg*, 763 F. Supp. 2d 1170 (N.D. Cal. 2011). For the reasons set forth in *Chevron* and this Opinion, the *Galaviz* and *TriQuint* decisions, to the extent they purport to apply Delaware law, are based on a misapprehension of Delaware law regarding the facial validity and as-applied analysis of forum selection bylaws.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Bylaw Complaint under Court of Chancery Rule 12(b)(6) is GRANTED. Defendants' motion to dismiss the Merger Complaint under Court of Chancery Rule 12(b)(3) also is GRANTED.[55]

**IT IS SO ORDERED.**

---

[55] Based on this conclusion, Providence's motions for expedition and a preliminary injunction are moot.