**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CARGILL, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N23C-03-047 SKR CCLD |
| | ) | |
| JUAN PABLO ROSSI, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 15, 2023
Decided: October 16, 2023

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Consideration of Defendant's Motion to Dismiss:*

### GRANTED.

Richard P. Rollo, Esquire, Travis S. Hunter, Esquire, and Jordan L. Cramer, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Plaintiff Cargill, Incorporated*.

John A. Sensing, Esquire, and Hannah L. Paxton, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, *Attorneys for Defendant Juan Pablo Rossi*.

**RENNIE, J.**

**INTRODUCTION**

This memorandum opinion considers and grants Defendant Juan Pablo Rossi ("Rossi")'s motion to dismiss.[1] The underlying case is a breach of contract action brought by Plaintiff Cargill, Incorporated ("Cargill") related to Rossi's change of employment from Cargill to a competitor. Cargill asserts that this conduct breached non-competition provisions in the equity compensation agreements that Rossi signed during his time at Cargill.[2]

**FACTUAL OVERVIEW**

For approximately eighteen years, Rossi worked for Cargill,[3] a Delaware corporation that distributes "food, agricultural, financial, and industrial products" globally.[4] Cargill awarded Rossi equity compensation in the course of his employment. Each time Rossi accepted stock, stock options, or other equity products as compensation, he signed an associated agreement. These included the S.A.C.I. and Subsidiaries Restated Stock Option Agreement,[5] the 2019 Restricted Stock Unit Agreement,[6] the 2020 Restricted Stock Unit Agreement,[7] and the 2020 Performance Share Unit Agreement[8] (each separately an "Agreement" and

---

[1] Def.'s Mot. to Dismiss.
[2] Compl. ¶¶ 1-8.
[3] Def.'s Opening Br. Supp. Mot. to Dismiss ("Opening Br.") 3.
[4] Compl. ¶ 9; Compl. Ex. B § 2.7(a).
[5] Compl. Ex. A.
[6] Compl. Ex. C.
[7] Compl. Ex. E.
[8] Compl. Ex. G.

collectively the "Agreements"). Each Agreement incorporated by reference an accompanying ownership plan, including the Cargill, S.A.C.I. and Subsidiaries Restated Stock Option Plan,[9] the 2019 Restricted Stock Unit Plan,[10] the 2020 Restricted Stock Unit Plan,[11] and the 2020 Performance Share Unit Plan[12] (each separately a "Plan" and collectively the "Plans").

Each Plan barred Rossi from engaging in "Competitive Activity" for one year after the conclusion of his employment at Cargill.[13] They defined "Competitive Activity" to include:

> Engaging in any business activity, in any geographic market in which the Corporation or any Related Entity is then engaged in business that is competitive with the business of the Corporation or any Related Entity. Participants understand that the Corporation currently does business globally and that the Corporation has operations and participates in markets around the world . . . .[14]

Pursuant to the Agreements and Plans, Rossi would forfeit his equity compensation if he engaged in Competitive Activity within that one-year post-separation period:

> If, prior to a Participant's Separation from Service or during the one-year period after the Participant's Separation from Service, regardless of the reason for such separation, the Participant directly or indirectly engages in Competitive Activity . . . , the Participant will immediately

---

[9] Compl. Ex. B.
[10] Compl. Ex. D.
[11] Compl. Ex. F.
[12] Compl. Ex. H.
[13] *E.g.*, Compl. Ex. A § 18(B).
[14] Compl. Ex. B. § 2.7(a); *see also* Compl. Ex. D § 2.9(a); Compl. Ex. F § 2.9(a); Compl. Ex. H § 2.15(a).

3

forfeit all of his or her Options, whether vested or unvested, any shares not yet issued to him or her in connection with the exercise of an Option, and any shares of Management Stock (or, if applicable, the cash equivalent at redemption of the shares) obtained pursuant to the Plan during the period that begins one year prior to the Competitive Activity . . . and ends one year following the Separation from Service.[15]

Further, each Agreement included the following choice of law and forum selection provisions:

> The Plan and this Agreement . . . shall be governed by the laws of the State of Delaware and construed according [sic] therewith without giving effect to any principles of conflicts of law. The exclusive venue for any action or proceeding hereunder or related to the Plan shall be in the Delaware Court of Chancery, whether or not such venue is or subsequently becomes inconvenient, and the parties to the Agreement consent to the jurisdiction of the Delaware Court of Chancery and expressly waive the right to object to such venue and to remove the case from the Delaware Court of Chancery.[16]

In December 2021 and March 2022, Rossi redeemed shares of Cargill stock and collected the proceeds.[17]  On or around March 25, 2022, Rossi concluded his employment at Cargill, and at that time, he had been the Vice President of Cargill's Food Segment Lead.[18]  By April 2022, Rossi was hired as Vice President, Wholesome Ingredients and Texturants, by Archer-Daniels-Midland Company ("ADM"), a competitor of Cargill.[19]

---

[15] Compl. Ex. A § 18(B); Compl. Ex. B § 5.4(d); Compl. Ex. C § 18(B); Compl. Ex. D § 4.6(d); Compl. Ex. E § 18(B); Compl. Ex. F § 4.6(d); Compl. Ex. G § 18(B); Compl. Ex. H § 4.6(d).
[16] Compl. Ex. A § 15; *see also* Compl. Ex. C § 15; Compl. Ex. E § 15; Compl. Ex. G § 15.
[17] Compl. ¶ 35.
[18] Compl. ¶ 10.
[19] Opening Br. 5-6; Compl. ¶ 32.

On May 18, 2022, Cargill mailed a letter to Rossi stating that, by joining ADM, he had forfeited his equity compensation and the proceeds from the redemptions of his Cargill, pursuant to the Agreements and Plans. Cargill demanded that Rossi repay the proceeds from the redemptions within thirty days.[20]

Rossi did not reply to the letter or send the payment.[21] This litigation followed.

## PROCEDURAL HISTORY

Cargill filed its complaint against Rossi in the Delaware Superior Court on March 22, 2023. Cargill asserts claims for breach of contract arising from Rossi's acceptance of employment with ADM within one year of his departure from Cargill. Cargill seeks monetary damages, an order that Rossi materially breached the Agreements, and a declaration that Rossi forfeited his Cargill stock, stock options, and the proceeds from the stock that he redeemed.[22]

Rossi moved to dismiss the complaint on May 24, 2023, pursuant to Superior Court Civil Rules 12(b)(2) and 12(b)(6) (the "Motion"). Rossi argues in the Motion that this Court does not have personal jurisdiction over him.[23] Further, he argues that his acceptance of employment with ADM did not breach the non-competition

---

[20] Compl. Ex. K.
[21] Compl. ¶ 7.
[22] Compl. 15.
[23] Opening Br. 8-13.

provisions of the Agreements and Plans and, even if it did, the provisions are facially unenforceable because they are unreasonably broad in scope and unduly harsh.[24]

On July 11, 2023, Cargill responded in opposition to the Motion, arguing that this Court has personal jurisdiction over Rossi, that he breached the non-competition provisions of the Agreements and Plans, and that those provisions are enforceable.[25] On August 4, 2023, Rossi filed a reply brief in further support of the Motion, expanding on his earlier arguments.[26] This Court heard argument on the Motion on August 15, 2023.

## STANDARD OF REVIEW[27]

Upon a motion to dismiss for lack of personal jurisdiction made pursuant to Superior Court Civil Rule 12(b)(2), the plaintiff has the burden to show a basis for the Court's exercise of jurisdiction over the nonresident defendant.[28] If, as here, there has been no evidentiary hearing or meaningful discovery, the Court evaluates whether the plaintiff has made a *prima facie* showing of personal jurisdiction in the complaint. In doing so, the Court accepts the well-pleaded factual allegations in the complaint as true, unless contradicted by affidavit, construes the record in the light

---

[24] *Id.* 5-8.
[25] Pl.'s Answering Br. Opp'n Def.'s Mot. to Dismiss ("Answering Br.").
[26] Def.'s Reply Br. Further Supp. Mot. to Dismiss.
[27] Because the Motion is analyzed and disposed of based on lack of personal jurisdiction, the Court will only set forth the standard of review pursuant to Superior Court Civil Rule 12(b)(2).
[28] Super Ct. Civ. R. 12(b)(2); *Green Am. Recycling, LLC v. Clean Earth, Inc.*, 2021 WL 2211696, at *3 (Del. Super. June 1, 2021) (quoting *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 800 (Del. Ch. 2020)).

most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant.[29]

## LEGAL ANALYSIS

Delaware law is unambiguously contractarian:

> This jurisdiction respects the right of parties to freely contract and to be able to rely on the enforceability of their agreements; where Delaware's law applies, with very limited exceptions, our courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering, both in recognition of a right to self-order and to promote certainty of obligations and benefits.[30]

Delaware courts are reluctant to "reliev[e] sophisticated business entities of the burden of freely negotiated contracts."[31] Hence, in Delaware, a freely negotiated contractual arrangement can give rise to personal jurisdiction in this state.[32] Where, for instance, "a party is considered bound to a forum selection clause, the court treats that party as having expressly consented to personal jurisdiction" in the chosen forum.[33] In such a circumstance, the party "should clearly anticipate being required to litigate in that forum."[34] This has limits, of course: "[T]he party is bound only by

---

[29] *Green Am. Recycling*, 2021 WL 2211696, at *3.

[30] *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 565-66 (Del. Ch. 2023) (quoting *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *4 (Del. Ch. Jan. 28, 2015)).

[31] *Id.* at 566 (quoting *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1061-62 (Del. Ch. 2006)).

[32] *BAM Int'l, LLC v. MSBA Grp. Inc.*, 2021 WL 5905878, at *6 (Del. Ch. Dec. 14, 2021).

[33] *Id.* (citing *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019)); *Bouchard v. Braidy Indus.*, 2020 WL 2036601, at *8 (Del. Ch. Apr. 28, 2020) ("Where the defendant has consented to jurisdiction, . . . both aspects of the jurisdictional analysis are deemed satisfied.").

[34] *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1228 (Del. 2018); *see also Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 801 (Del. Ch. 2020) (quoting *Nat'l Indus. Grp.*

the terms of the consent, and such consent applies only to those causes of action that are identified in the consent provision."[35]

Cargill contends that Rossi consented to the Delaware Superior Court's jurisdiction over him by signing the Agreements and Plans, even though each contained a clause which states that "the parties to the Agreement consent to the jurisdiction of the Delaware Court of Chancery."[36]  However, a plain reading of this carefully crafted, Chancery-specific, exclusive provision fails to confer jurisdiction upon the Delaware Superior Court.  This language does not match the cautionary wording often utilized in forum selection clauses wherein jurisdiction is either expressly conferred generally among various Delaware courts or on one specific Delaware court with various designated alternative courts.  For instance, in *Ruggiero v. FuturaGene, plc.*, the Court of Chancery found that a forum selection clause manifesting the parties' consent to "the exclusive jurisdiction of the State of Delaware" was enforceable in the personal jurisdiction context.[37]  Relatedly, in *Eagle Force Holdings, LLC v. Campbell*, the Delaware Supreme Court found that a forum selection clause manifesting the parties' consent to suits brought in "any court of general jurisdiction in the City of Wilmington, Delaware[,]" was also enforceable

---

*(Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013)) ("Where the parties to the forum selection clause have consented freely and knowingly to the court's exercise of jurisdiction, the clause is sufficient to confer personal jurisdiction on a court.")

[35] *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132 (Del. Ch. 2008).

[36] Answering Br. 7-8.

[37] 948 A.2d at 1132 (but not forgoing minimum contacts analysis for corporation's directors).

for personal jurisdiction purposes.[38]  In contrast, the forum selection clauses of the Agreements and Plans that Rossi signed specify narrowly that he consents to the personal jurisdiction of the Court of Chancery, not Delaware courts in general or this Court.[39]  Interpreting this provision contrary to what it says would contravene the parties' intentions and their bargained-for arrangement.[40]  Hence, the forum selection provisions in the Agreements and Plans do not confer personal jurisdiction over Rossi in this Court.

Cargill argues in the alternative that "principles of implied consent" require that this Court exercise personal jurisdiction over Rossi, citing *In re Pilgrim's Pride Corp. Derivative Litigation*.[41]  In that case, the company's bylaws provided that "the sole and exclusive forum" for various causes of action would be "the Court of Chancery of the State of Delaware and any state appellate court therefrom within the

---

[38] 187 A.3d 1209, 1222, 1228-29 (Del. 2018).  Further, in *City of Providence v. First Citizens BancShares, Inc.*, the Court of Chancery enforced a forum selection bylaw manifesting the parties' consent to the jurisdiction of "the United States District Court for the Eastern District of North Carolina, or if that court lacks jurisdiction, any North Carolina state court with jurisdiction."  99 A.3d 229, 230-31, 242 (Del. Ch. 2014).

[39] *See, e.g.*, Compl. Ex. A § 15.

[40] *See Ruggiero*, 948 A.2d at 1138 ("[T]o determine whether a party to a contract submitted to the court's jurisdiction, 'the express terms of the relevant provisions' govern.").  It is readily apparent that the parties bargained for an arrangement whereby any challenge to the non-competition provision would be remedied in the Court of Chancery through injunctive or other equitable relief.  Cargill, for strategic reasons, realized that it would fare better challenging Rossi's new employment through a forfeiture theory as opposed to seeking injunctive or other relief related to a breach of a covenant not to compete.

[41] Answering Br. 24-25

9

State of Delaware."[42]   This forum selection bylaw provided that if the Court of Chancery declined to accept jurisdiction, "any state or federal court within the State of Delaware" had jurisdiction.[43]   Hence, the Court of Chancery held that the company's shareholders had "consented implicitly to the existence of personal jurisdiction" in Delaware by participating in the vote to adopt this broad forum selection bylaw.[44]

Cargill's reliance on *Pilgrim's Pride* does not advance its argument.  Unlike the broad provision in *Pilgrim's Pride*, the forum selection clauses in the Agreements and Plans signed by Cargill and Rossi are narrow and exclusive.  They only establish consent to the personal jurisdiction of the Court of Chancery, not this Court, and they do not designate alternative courts.  The *Pilgrim's Pride* court held that the shareholders had implicitly consented to the forum selection bylaw as it was written, not to a broader bylaw than was written.[45]   Rossi cannot consent to a hypothetical forum selection clause for which Cargill and Rossi did not bargain.  Further, Rossi has taken no action that would otherwise manifest his implied consent to this Court's personal jurisdiction over him.  Hence, Rossi has not implicitly consented to the personal jurisdiction of the Delaware Superior Court.

---

[42] *In re Pilgrim's Pride Corp. Derivative Litig.*, 2019 WL 1224556, at *12-13 (Del. Ch. Mar. 15, 2019).
[43] *Id.* at *13.
[44] *Id.* at *15.
[45] *Id.* at *12-13.

Where a party has not consented to personal jurisdiction in the relevant forum by contract, as is the case here, this Court follows a two-step analysis to determine whether personal jurisdiction over a nonresident defendant may otherwise be established. First, it determines whether any subsection of the Delaware long-arm statute, 10 *Del. C.* § 3104, applies. Second, if the long-arm statute applies, it determines whether exercising personal jurisdiction over the nonresident defendant violates due process.[46]

## A. The Long-Arm Statute

Cargill contends that subsection (c)(1) of the Delaware long-arm statute is applicable to confer personal jurisdiction over Rossi in Delaware. Pursuant to that subsection, this Court "may exercise personal jurisdiction over any nonresident . . . who . . . [t]ransacts any business or performs any character of work or service in the

---

[46] *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012).

State."[47]  To satisfy this requirement, "some act must actually occur in Delaware."[48]  The subsection confers specific, not general, jurisdiction, so there must be some nexus between this Delaware act and the conduct that forms the basis of the suit.[49]

During Rossi's eighteen-year period of employment at Cargill, he worked in Argentina and Minneapolis, Minnesota.[50]  Rossi states that he did not attend meetings or conduct business in Delaware during this period and indeed "has never even been to Delaware."[51]  Since leaving Cargill and joining ADM, Rossi resides in Glencoe, Illinois.[52]  Cargill does not contend that Rossi was ever physically present in Delaware or transacted any business here.  Accordingly, no act actually occurred in Delaware, and the long-arm statute does not apply.[53]

---

[47] 10 *Del. C.* § 3104(c)(1).  The other subsections, inapplicable in this case, provide for the exercise of personal jurisdiction over a person who:

(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
(5) Has an interest in, uses, or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*Id.* § 3104(c)(2)-(6).
[48] *Murphy v. Pentwater Capital Mgmt. LP*, 2017 WL 5068572, at *3 (Del. Super. Oct. 31, 2017) (quoting *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 804 (Del. Ch. 2009)).
[49] *In re P3 Health Grp. Holdings, LLC*, 2022 WL 8011513, at *5 (Del. Ch. Oct. 14, 2022).
[50] Compl. Ex. J.
[51] Opening Br. 10-12; Def.'s Aff. Supp. Def.'s Mot. to Dismiss.
[52] Compl. ¶ 10.
[53] *See Kelly v. McKesson HBOC, Inc.*, 2002 WL 88939, at *17 (Del. Jan. 17, 2002) ("Absent any actual conduct in Delaware, [the defendant chief financial officer's] positions . . . are insufficient

**B. Due Process**

Because no provision of 10 *Del. C.* § 3104 applies here, there is no need to engage in a due process analysis.[54] Nonetheless, Cargill appears to argue that this Court can and should still engage in a due process analysis based upon its reading of the seminal case, *Burger King Corp. v. Rudzewicz*.[55] Cargill misapprehends the law on this point. Cargill looks to *Burger King* to support its proposition that the parties' selection of Delaware choice of law, combined with Rossi's pattern of contractual conduct with Cargill, confers personal jurisdiction over Rossi in this Court.[56]

In *Burger King*, the United States Supreme Court held that due process was not offended by a district court's application of Florida's long-arm statute to exercise

---

to establish jurisdiction. . . . [T]his Court will not establish personal jurisdiction on the mere fact that he was employed by a Delaware corporation."), *quoted in LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, 2017 WL 3912632, at *4 n.42 (Del. Ch. Sept. 7, 2017); *Herman v. BRP, Inc.*, 2015 WL 1733805, at *4 (Del. Super. Apr. 13, 2015) ("It is also well established that a choice of Delaware law provision in a contract is not, of itself, a sufficient transaction of business in the State to confer jurisdiction under § 3104(c)(1)."); *EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at *4 (Del. Ch. Aug. 4, 2017) (citing *NRG Barriers, Inc. v. Jelin*, 1996 WL 377014 (Del. Ch. July 1, 1996)) (defendant entering form stockholders' agreement with Delaware choice of law provision did not confer personal jurisdiction under long-arm statute); *see also Intellimark, Inc. v. Rowe*, 2005 WL 2739500, at *2 (Del. Super. Oct. 24, 2005) ("[T]here is no basis under the long-arm statute to confer personal jurisdiction simply on the basis of a choice of law provision in a promissory note.").

[54] *Mobile Diagnostic Grp. Holdings, LLC v. Suer*, 972 A.2d 799, 809 n.46 (Del. Ch. 2009) ("Because I have found that there is no statutory basis for jurisdiction over [the defendant] in Delaware, I need not reach . . . whether this Court's exercise of jurisdiction over [him] would comport with the requirements of the Due Process Clause . . . ."); *Abajian v. Kennedy*, 1992 WL 8794, at *9 (Del. Ch. Jan. 17, 1992) ("I conclude that [the defendant] is not subject to personal jurisdiction under Delaware's long-arm statute, 10 *Del. C.* § 3104. As a result, I need not reach the issue whether sustaining jurisdiction . . . would violate due process requirements of the 14th Amendment.").

[55] 471 U.S. 462 (1985).

[56] Answering Br. 27-28.

13

personal jurisdiction over a nonresident defendant whose claim arose out-of-state. In so holding, the Court noted that the state selected in the parties' choice of law provision was just one factor in the accompanying due process analysis, insufficient on its own to confer personal jurisdiction. The defendant's interdependent, twenty-year relationship with the plaintiff corporation's Florida headquarters "reinforced his deliberate affiliation" with Florida.[57]

Here, however, *Burger King* does not support the need for a due process analysis. Unlike in *Burger King*, in which the defendant's conduct fell within the purview of Florida's long-arm statute and necessitated that the Court consider due process factors,[58] Rossi's conduct does not fall within any subsection of Delaware's long-arm statute, 10 *Del. C.* § 3104. Hence, *Burger King* does not apply, and this Court need not evaluate whether an exercise of personal jurisdiction over Rossi comports with the due process analysis of that case.

Ultimately, Rossi's only relationship with Delaware is contractual, and the contracts with Cargill which established that relationship could not lead Rossi to reasonably anticipate being required to defend himself in this Court. To receive his equity compensation, he signed the Agreements and Plans, which included forum

---

[57] 471 U.S. 462, 463-64, 482-83 (1985).

[58] The district court found that Florida's long-arm statute reached the defendant's conduct. The circuit court did not analyze the statutory issue because the parties stipulated that the long-arm statute applied. The Supreme Court questioned this stipulation but did not analyze with depth or dispute the first step of the personal jurisdiction analysis. *Id.* at 470 n.12.

selection clauses evincing an intent to consent only to the personal jurisdiction of the Court of Chancery. Rossi worked at Cargill from Argentina, then from Minnesota, then left the company. These contacts are insufficient to reach the legal thresholds required for this Court to exercise personal jurisdiction over him.[59]

## CONCLUSION

Rossi's motion to dismiss is **GRANTED**. Because the action is properly dismissed pursuant to Superior Court Civil Rule 12(b)(2), this Court need not address Rossi's alternative arguments for dismissal pursuant to Rule 12(b)(6).

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

---

[59] At oral argument, the Court inquired of counsel whether the jurisdictional challenge would be mooted if Cargill had initiated this action in the Court of Chancery, and it was dismissed for lack of subject matter jurisdiction then transferred to this Court, pursuant to 10 *Del. C.* § 1902. Counsel for Rossi alerted the Court that it would have properly reserved the right to challenge personal jurisdiction in this Court in such a scenario. Hence, Rossi would still have had grounds to move to dismiss for lack of personal jurisdiction in this Court. Cargill's choice of initial forum is not determinative in this case.