# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| UNITED HEALTH ALLIANCE, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff/ Counterclaim Defendant, | ) ) ) | C.A. No. 7710-VCP |
| v. | ) ) | |
| UNITED MEDICAL, LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant/ Counterclaim Plaintiff. | ) ) ) | |

## MEMORANDUM OPINION

Submitted: August 13, 2014
Decided: November 20, 2014

Jeffrey M. Weiner, Esq., LAW OFFICES OF JEFFREY M. WEINER, Wilmington, Delaware; James S. Green, Sr., Esq., SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, Delaware; *Attorneys for Plaintiff/Counterclaim Defendant United Health Alliance, LLC.*

Adam L. Balick, Esq., Melony R. Anderson, Esq., BALICK & BALICK, LLC, Wilmington, Delaware; *Attorneys for Defendant/Counterclaim Plaintiff United Medical, LLC.*

**PARSONS, Vice Chancellor.**

This is primarily a breach of contract action seeking damages and injunctive relief for loss of access to medical billing and records management software. The plaintiff who filed the initial complaint claims to have entered into a contract with the defendant. The complaint was amended later to add two more plaintiffs who allegedly are third-party beneficiaries of that contract. The defendant has moved to dismiss the latter two plaintiffs for failure to state a claim upon which relief can be granted. Those plaintiffs allege, in the alternative, legal theories of quasi-contract, unjust enrichment, and third-party beneficiary status.

For the reasons that follow, I conclude that it is reasonably conceivable that the two additional plaintiffs could prove facts at trial that would entitle them to recover on a third-party beneficiary theory. The plaintiffs' claims based on theories of quasi-contract and unjust enrichment, however, fail to meet the pleading requirements to survive a Rule 12(b)(6) motion. Therefore, I grant in part and deny in part the defendant's motion to dismiss.

## I.      BACKGROUND[1]

### A.      The Parties

Plaintiff United Health Alliance, LLC ("UHA") is a Delaware limited liability company that provides administrative, management, and billing support for the medical

---

[1]      Unless otherwise noted, the facts recited herein are drawn from the well-pled allegations of the Verified Amended Complaint (the "Complaint") and are presumed true for purposes of Defendant's motion to dismiss.

services rendered by its affiliates, Christiana Medical Group, P.A. ("CMG"), Bayhealth Hospitalists, LLC ("BHH," and, together with CMG, the "Affiliates"), and St. Francis Hospitalists, LLC. UHA, CMG, and BHH comprise the "Plaintiffs" in this case.

Defendant, United Medical, LLC ("UM"), is a Delaware limited liability company and an authorized distributor of PowerWorks Practice Management ("PowerWorks"), a software application for the healthcare services industry. UM distributes PowerWorks pursuant to an agreement with Cerner Healthcare Solutions, Inc. ("Cerner").

## B.    Facts

Plaintiffs aver that prior to January 2011, when UM began providing access to PowerWorks, UHA was party to a Software License, Hardware Purchase, Services and Support Agreement with Cerner, through which it had access to Cerner's PowerWorks software. UHA entered into the agreement with Cerner on or about January 27, 2009, and the agreement had a term of five years. Beginning in January 2011, UHA began accessing PowerWorks from UM, in its role as an authorized Cerner distributor, rather than from Cerner directly. At or around that time, UHA and Cerner formally terminated the contract between them. UM allegedly assumed its responsibility for UHA pursuant to an agreement between UM and Cerner. Specifically, UM and Cerner had entered into an Amended and Restated Cerner System Schedule No. 1 on February 4, 2011, which was effective retroactively as of December 31, 2010. After signing the agreement with Cerner, UM, not Cerner, provided PowerWorks to UHA.

UM and UHA never signed a written contract for this service. UM provided its standard service agreement to UHA, which UHA revised and returned to UM. Though

2

the parties attempted to resolve their differences, their negotiation was unsuccessful. No written agreement was ever finalized and executed. During these negotiations, UHA paid UM for access to PowerWorks, and UM continued to provide software and support services. Plaintiffs allege that, despite the disagreement as to certain terms, there was an unwritten contract between UHA and UM, based on the continued payments by UHA and the provision of service by UM. The Affiliates are alleged to have been third-party beneficiaries of that contract.

On or before May 1, 2012, Defendant UM prepared and sent an invoice to UHA for the entire month of May 2012. UHA paid by check indicating clearly thereon that the payment was for the entire month of May; UM deposited UHA's check on May 7, 2012. UM, therefore, accepted payment for the entire month of May.

Although the parties disagree regarding the cause, on May 7, 2012, UM blocked UHA's access to PowerWorks. UM restored UHA's access to that software from around 6:00 p.m. on May 14 until June 1, 2012. Thereafter, UHA demanded eight more days of access, which it alleges were necessary to close out the electronic billing and payment information from before June 1, 2012. UM never restored this access. UHA also demanded the return, in an electronic format, of "its confidential information provided for storage and processing of data for billing"[2] that had been maintained by the PowerWorks system.

---

[2]     Compl. ¶ 15.

3

Plaintiffs contend UM's actions breached its agreement with UHA. As a result of this breach, Plaintiffs allege that they have been precluded from seeking payment "from insurers and/or their insureds/patients."[3] According to UHA and its Affiliates, they have been unable, due to UM's breach, to bill their insureds and certain patients and have incurred: (1) financial damages of $286,395; and (2) expenses of $48,601 as of November 2013. The Complaint further alleges that "Plaintiff UHA has no adequate remedy at law or otherwise for the harm done," and that "Plaintiff UHA will suffer irreparable harm, damage and injury," unless UM is enjoined.[4] The Affiliates claim that they were third-party beneficiaries to the contract between UHA and UM. In addition, all Plaintiffs have asserted a quasi-contract claim and an unjust enrichment claim against UM for the above actions, as alternate theories of relief.

In their prayer for relief as to the claims subject to UM's motion to dismiss, Plaintiffs seek: (1) a temporary restraining order ("TRO") against UM preventing it from destroying or interfering with Plaintiffs' confidential information in electronic format; (2) a TRO and preliminary injunction requiring UM to surrender to UHA all confidential information which UHA provided to UM in connection with patient billing and other management services performed by UHA; (3) eventually, a permanent injunction to the same effect; (4) a monetary award equal to the loss of collections from payors as a result of the breach; and (5) their fees and expenses.

---

[3]  *Id.* ¶ 16.

[4]  *Id.* ¶¶ 22-23.

## C.        Procedural History

On July 20, 2012, UHA filed its initial complaint with this Court.  On November 30, 2013, CMG and BHH moved to intervene; this Court granted that motion on December 2, 2013.  A few days later, UHA amended its Complaint to add CMG and BHH as parties.  UM answered on January 6, 2014 and also moved to dismiss the Affiliates pursuant to Court of Chancery Rule 12(b)(6).  Having since had the benefit of full briefing and oral argument, this is the Court's ruling on UM's motion.

## D.        The Parties' Contentions

With regard to the third-party beneficiary claim, UM argues that the Affiliates have not pled that they were intended beneficiaries of the contract between UM and UHA.  Specifically, UM avers that UHA's allegation that it "provides administrative, management and billing for medical services rendered by [CMG and BHH]"[5] is not sufficient to plead that the Affiliates were intended third-party beneficiaries to any potential contract.  Concerning the unjust enrichment and quasi-contract claims, UM contends that "[the Affiliates] have not alleged that they conferred any benefit upon UM, or that UM unjustly retained that benefit."[6]  UM also asserts that there is no legally cognizable relationship between the Affiliates and UM and, as such, any damages from the loss of access to PowerWorks sought by the Affiliates must come from UHA, with whom CMG and BHH have a legal relationship.

---

[5]        *Id.* ¶ 1.

[6]        Def.'s Opening Br. 8.

The Affiliates argue that the Complaint supports the allegation that they were third-party beneficiaries to the contract between UHA and UM. CMG and BHH also maintain that they have pled sufficiently their alternate claims based on theories of quasi-contract and unjust enrichment.

## II.    ANALYSIS

### A.    Applicable Standard

Pursuant to Rule 12(b)(6), this Court may grant a motion to dismiss for failure to state a claim if a complaint does not assert sufficient facts that, if proven, would entitle the plaintiff to relief.

> A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim must be denied unless, assuming the well-pled allegations to be true and viewing all reasonable inferences from those allegations in the plaintiff's favor, [the Court does] not find there to be a reasonably conceivable set of circumstances in which the plaintiff could recover. In this analysis, [the Court should] not accept as true any conclusory allegations unsupported by specific facts.[7]

### B.    Third-Party Beneficiary Claim

I first consider the claims of CMG and BHH that they are entitled to relief as third-party beneficiaries of the contract between UHA and UM.

---

[7] *City of Providence v. First Citizens BancShares, Inc.*, 2014 WL 4409816, at *3 (Del. Ch. Sept. 8, 2014) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011), and *Gantler v. Stephens*, 965 A.2d 695, 704 (Del. 2009)).

6

"Well-settled within precepts of contract law is recognition that non-parties to a contract ordinarily have no rights under it."[8] This general principle is subject to an exception recognizing that intended, but not incidental, third-party beneficiaries of a contract have legal rights under that contract, despite being non-parties.[9] This Court has held that that:

> In order for third party beneficiary rights to be created, not only is it necessary that performance of the contract confer a benefit upon third parties that was intended, but the conferring of a beneficial effect on such third party—whether it be a creditor of the promisee or an object of his or her generosity—should be a material part of the contract's purpose.[10]

In *Madison Realty Partners 7, LLC v. AG ISA, LLC*,[11] this Court identified the three elements of a third-party beneficiary claim:

> (1) an intent between the contracting parties to benefit a third party through the contract, (2) the benefit being intended to serve as a gift or in satisfaction of a pre-existing obligation to the third party, and (3) a showing that benefiting the third

---

[8] *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *7 (Del. Ch. May 16, 2007).

[9] *Diamond Elec., Inc. v. Delaware Solid Waste Auth.*, 1999 WL 160161, at *6 (Del. Ch. Mar. 15, 1999) ("A third party has rights under a contract when the contracting parties intend by their contract to confer a benefit on the third party"); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981).

[10] *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 270 (Del. Ch. 1987); *see also NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007) ("As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions. Mere incidental beneficiaries have no legally enforceable rights under a contract.").

[11] 2001 WL 406268 (Del. Ch. Apr. 17, 2001).

party was a material aspect to the parties agreeing to contract.[12]

Here, CMG and BHH argue that they are intended third-party beneficiaries of an unwritten contract between UHA and UM. A mere allegation that a party "was an intended beneficiary is, of course, not sufficient to state a claim."[13] Generally, plaintiffs claiming third-party beneficiary status must plead more than a relationship with one of the parties to the contract at issue.

In arguing that the Affiliates have failed to meet their pleading burden in that regard, UM relies on *MetCap Securities*. In that case, this Court dismissed a third-party beneficiary claim because the alleged third-party beneficiary failed to show that the contract it had with a party to the disputed contract evidenced the requisite intent, even though the disputed contract acknowledged the other contract with the third party.[14] The case before me is distinguishable from *MetCap Securities*, however, because it involves a high degree of government regulation. The sharing of medical information and data, such as the data at the heart of this case, is heavily regulated, at a minimum, at the federal level.

Paragraph four of the Complaint specifically points to the Health Insurance Portability and Accountability Act ("HIPAA") as part of the federal regulatory regime

---

[12]    *Id.* at *5.

[13]    *MetCap*, 2007 WL 1498989, at *7.

[14]    *Id.* at *7-8.

8

governing the handling and transfer of medical information. As part of HIPAA, Congress authorized the Department of Health and Human Services ("DHHS") to promulgate regulations to protect the privacy of health information.[15] These regulations are codified under 45 C.F.R. §§ 160 and 164, and known as the Privacy Rule. As described by DHHS, the Privacy Rule requires that covered entities enact "appropriate safeguards to protect the privacy of personal health information, and sets limits and conditions on the uses and disclosures that may be made of such information without patient authorization."[16]

The applicable HIPAA regulation defines a covered entity as: "(1) [a] health plan, (2) [a] health care clearinghouse, or (3) [a] health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter."[17] Based on the allegations in the Complaint, I consider it reasonably conceivable that Plaintiffs will be able to show that CMG and BHH, as alleged health care providers, fall within this definition and constitute covered entities for HIPAA purposes. Under the statute, "[a] covered entity may disclose protected health information to a *business associate* and may allow a *business associate* to create, receive,

---

[15]    *See generally* Deborah F. Buckman, *Validity, Construction, and Application of Health Insurance Portability and Accountability Act of 1996 (HIPAA) and Regulations Promulgated Thereunder*, 194 A.L.R. Fed. 133 (2004).

[16]    U.S. DEP'T OF HEALTH AND HUMAN SERVS., *The Privacy Rule*, http://www.hhs.gov/ocr/privacy/hipaa/administrative/privacyrule/ (last visited Nov. [14], 2014).

[17]    45 C.F.R. § 160.103.

9

maintain, or transmit protected health information on its behalf, if the covered entity

obtains satisfactory assurance that the business associate will appropriately safeguard the

information."[18]  As defined by HIPAA, a business associate is an entity that:

> On behalf of such covered entity . . . creates, receives, maintains, or transmits protected health information for a function or activity regulated by this subchapter, including claims processing or administration, data analysis, processing or administration, utilization review, quality assurance, patient safety activities listed at 42 CFR 3.20, billing, benefit management, practice management, and repricing.[19]

UHA "provides administrative, management and billing for medical services rendered by

its affiliates."[20]  Thus, UHA would appear to qualify as a business associate to the

Affiliates for purposes of HIPAA and the DHHS regulations.

As a business associate, UHA is entitled to:

> disclose protected health information to a business associate that is a subcontractor and may allow the *subcontractor* to create, receive, maintain, or transmit protected health information on its behalf, if the business associate obtains satisfactory assurances, in accordance with § 164.504(e)(1)(i), that the *subcontractor* will appropriately safeguard the information.[21]

A subcontractor is "a person to whom a business associate delegates a function, activity,

or service, other than in the capacity of a member of the workforce of such business

---

[18]     *Id*. §  164.502(e)(1)(i) (emphases added).

[19]     *Id*. §  160.103.

[20]     Compl. ¶ 1.

[21]     45 C.F.R. §  164.502(e)(1)(ii) (emphases added).

associate."[22]  Plaintiffs have alleged that UHA contracted first with Cerner and then with UM "in connection with the storage and processing of data for the Affiliates."[23]  HIPAA requires disclosures to subcontractors to meet a variety of mandatory protocols for contracts between covered entities and business associates.[24]  These protocols are identical for contracts between business associates and subcontractors.  Indeed, the regulations require that contracts between business associates and subcontractors must "ensure that any subcontractors that create, receive, maintain, or transmit protected health information on behalf of the business associate agree to the same restrictions and conditions that apply to the business associate with respect to such information."[25]

Based on these facts, I find that the Complaint supports a reasonable inference that UM was a subcontractor under the HIPAA regulatory regime.  The record also supports a reasonable inference that UHA was a business associate of the Affiliates, CMG and BHH, which are covered entities under HIPAA.  Accordingly, it is reasonably conceivable that Plaintiffs can show that UM, as a subcontractor, was subject to the same regulatory restrictions and conditions that applied to UHA as a business associate.  In these circumstances, I am convinced that a court could find that when UM received from UHA the information provided to it by the Affiliates—information protected by

---

[22]    *Id*. § 160.103.

[23]    Compl. ¶ 4.

[24]    *See* 45 C.F.R. §  164.502(e)(2).

[25]    *Id*. § 164.504(e)(2)(ii)(D).

HIPAA—UM was aware not only of the federally mandated privacy controls to which the information was subject, but also of the existence of the Affiliates, as the source of the protected health information. I therefore consider it reasonably conceivable that the Affiliates could prove at trial that UM may have intended to benefit the Affiliates through its arrangement with UHA. Thus, Plaintiffs adequately have pled the first element of the third-party beneficiary standard.

The second element of a third-party beneficiary claim requires that the agreement confer a beneficial effect on a third party. This benefit must be either a gift or in fulfillment of a pre-existing obligation. The Complaint alleges, and I presume it is true, that the Affiliates contracted with UHA to provide administrative, management, and billing services. As such, there likely was some benefit and burden placed on both the Affiliates and UHA by the arrangement they had between them. Any contract between UHA and UM would have provided the benefit of billing services to the Affiliates, thereby fulfilling UHA's pre-existing obligation. Hence, I infer that Plaintiffs also could satisfy this element of the third-party beneficiary test.

Lastly, I examine whether making the Affiliates third-party beneficiaries of whatever contract existed between UHA and UM was a material aspect of that arrangement. Because UM was a subcontractor of UHA, it is reasonably conceivable that UM knew that the confidential patient information UM received for processing was generated by a party other than UHA. This is a logical consequence of the regulatory mandate under HIPAA that the business associate–subcontractor relationship be subject to the same conditions as the covered entity–business associate relationship. As such, it

12

is also reasonable to infer that, as a material purpose of its alleged contract with UHA, UM intended to provide a benefit to the underlying medical providers that generated the confidential information. Based on the allegations in the Complaint and the overlay of federal medical privacy regulation referenced herein, I conclude that the Affiliates have pled sufficient facts to meet the final element of their third-party beneficiary claim.

In sum, the Complaint supports a reasonable inference that, in light of relevant HIPAA regulations, CMG and BHH were third-party beneficiaries of the alleged contract between UHA and UM. I have no difficulty reaching this conclusion with respect to the portion of Plaintiffs' claims related to the handling and return of their confidential information. Another important aspect of Plaintiffs' claim, however, relates to a different issue: Plaintiffs' request for an award of damages against UM "equal to the loss of collections from secondary payors based upon UM's breach and expenses incurred in connection therewith."[26] Both Plaintiffs and Defendant provided only sparse and relatively unhelpful briefing on this aspect of the third-party beneficiary claim. Having concluded that Plaintiffs have stated a third-party beneficiary claim as to the alleged UHA–UM contract, at least as it relates to the treatment of confidential information of the Affiliates, I am not convinced at this preliminary stage that Plaintiffs could not conceivably prove that the Affiliates are entitled to damages on a third-party beneficiary theory. I am skeptical about such a damages claim, but conclude that it must be evaluated after a more thorough development of the record and clarification of the

---

[26]     Compl. Prayer for Relief ¶ d.

13

relevant law and its application to the facts of this case.[27]  Therefore, UM's motion to dismiss the Affiliates' third-party beneficiary claim for breach of contract is denied.

## C.  Alternative Theories

Plaintiffs also assert, as alternative theories, a quasi-contract claim and an unjust enrichment claim.  Although they are not clearly delineated either in the Complaint or in Plaintiffs' briefing, I will examine these two claims separately, because the elements of each are distinct.

### 1.  The Quasi-Contract Claim

Plaintiffs' quasi-contract claim against UM alleges that, even if no express contract existed between UHA and UM, the Court should find that a quasi-contract existed between the Affiliates and UM.  An "implied, or quasi-contract, is one where the law will infer the existence of a contractual relationship without regard to the actual intention of the parties where circumstances are such that justice warrants a recovery as though there had been a promise or contract."[28]  There is no such relationship between the Affiliates and UM.

As the governing standard for quasi-contracts, the parties both cite the Delaware Superior Court's decision in *Spanish Tiles, Ltd. v. Hensey*,[29] which holds:

---

[27]  *Cf. Tunnell v. Stokley*, 2006 WL 452780, at *2 (Del. Ch. Feb. 15, 2006) (stating, in context of a motion for summary judgment, that the Court "maintains the discretion to deny summary judgment if it decides that a more thorough development of the record would clarify the law or its application.").

[28]  *Dorsey v. State ex rel. Mulrine*, 301 A.2d 516, 518 (Del. 1972).

[29]  2005 WL 3981740 (Del. Super. Mar. 30, 2005).

14

> The essential elements of a quasi-contract are [1] a benefit conferred upon the defendant by the plaintiff, [2] appreciation or realization of the benefit by the defendant, and [3] acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable to retain it without paying the value thereof.[30]

Further, "it is not enough that the defendant received a benefit from the activities of the plaintiff; if the services were performed at the behest of someone other than the defendants, the plaintiff must look to that person for recovery."[31]

Thus, the primary inquiry under the first element of *Spanish Tiles* focuses on which party conferred the benefit and on whom. Paragraph 8 of the Complaint states that on January 1, 2011, "UM began providing software and support services to Plaintiff UHA."[32] Plaintiffs allege that over the following months UM and UHA were unable to agree on specific terms of service, although "UM continued to provide software and support services to Plaintiff UHA."[33] This continued until May of 2012. The Complaint then alleges that:

> On or before May 1, 2012, Defendant UM prepared and sent an invoice to Plaintiff UHA for the entire month of May 2012, Plaintiff UHA paid by check . . . and UM knowingly deposited Plaintiff UHA's check . . . accepting payment for the entire month of May; however, Defendant UM blocked

---

[30]     *Id.* at *3 n.9.

[31]     *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *6 (Del. Ch. May 16, 2007).

[32]     Compl. ¶ 8.

[33]     *Id.* ¶¶ 9-11.

15

> the access of Plaintiff UHA to the Cerner software from . . .
> May 7, 2012 through . . . May 14, 2012.[34]

These allegations support a reasonable inference that a quasi-contract existed between UHA and UM, but they do not include any specific facts that suggest the Affiliates provided a benefit to UM under circumstances such that it would be inequitable for UM to retain the benefit without paying for it. Similarly, Plaintiffs' Opposition Brief to this motion states that, "Plaintiff UHA . . . conferred a direct, monetary benefit upon Defendant UM."[35] The Complaint portrays a two-way relationship between UHA and UM, under which UM received UHA's money in exchange for granting UHA access to PowerWorks. There is no reasonable basis to infer, however, that a similar benefit was transferred between *the Affiliates* and UM. Plaintiffs have not pled sufficient facts to support a reasonable inference that the Affiliates conferred a benefit upon UM that would fulfill the first element of a quasi-contract claim. Failure to plead an essential element of a claim will result in the dismissal of that claim.[36] As such, because CMG and BHH have failed to plead the first element of a quasi-contract claim, their claim for such relief is dismissed.

## 2. The Unjust Enrichment Claim

The factual premises for the unjust enrichment claim of CMG and BHH are similar to their quasi-contract claim, but the elements of such a claim are distinct. "The

---

[34] *Id.* ¶ 12.

[35] Pls.' Opp'n Br. 11.

[36] *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 972 (Del. Ch. 2000).

elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[37]  In addition, this Court has held that:

> [T]o recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment.  It is not enough that the defendant received a benefit from the activities of the plaintiff; if the services were performed at the behest of someone other than the defendants, the plaintiff must look to that person for recovery.[38]

In this case, the unjust enrichment allegedly came from the week-long period in May 2012 during which UM denied UHA access to the PowerWorks system, despite UHA already having paid for such access.  The relationship between the parties here is some sort of contract or quasi-contract between UM and UHA, and another between UHA and the Affiliates.  UHA performed functions for and on behalf of the Affiliates and subcontracted some of those functions to UM.  As previously noted, the Complaint expressly alleges that UHA paid UM.[39]  These allegations support a reasonable inference that UHA, at least to some extent, was impoverished and UM was unjustly enriched by those payments.  There are no specific facts alleged, however, that link UHA's

---

[37]  *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citing *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999*)*, and *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998)).

[38]  *MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *6 (Del. Ch. May 16, 2007).

[39]  *See supra* notes 32-34 and accompanying text.

17

impoverishment to the Affiliates: the only transfers alleged are between UHA and UM. Thus, to the extent that UM may have been unjustly enriched, it was at UHA's expense. Furthermore, the Affiliates, pursuant to this Court's holding in *MetCap Securities*, must look to UHA, not UM, for recovery. Because CMG and BHH have failed to plead this critical component of their unjust enrichment claim, I dismiss that claim under Rule 12(b)(6).

## III. CONCLUSION

For the reasons stated in this Memorandum Opinion, I deny Defendant's motion to dismiss with respect to CMG and BHH's third-party beneficiary claim and I grant Defendant's motion with respect to the quasi-contract and unjust enrichment claims asserted by CMG and BHH.

**IT IS SO ORDERED**.