# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE TESLA, INC. | ) | Consolidated & Coordinated |
| DERIVATIVE LITIGATION | ) | C.A. No. 2024-0631-BWD |

## OPINION GRANTING MOTIONS TO DISMISS

Date Submitted: April 3, 2026
Date Decided: April 13, 2026

P. Bradford deLeeuw, DELEEUW LAW LLC, Wilmington, DE; OF COUNSEL: Olimpio Lee Squitieri, SQUITIERI & FEARON, LLP, New York, NY; Fletcher Moore, MOORE LAW, PLLC, New York, NY; *Attorneys for Plaintiff Michael Perry.*

Bruce E. Jameson, Marcus E. Montejo, Kevin H. Davenport, John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, DE; OF COUNSEL: Daniel P. Chiplock, John T. Nicolaou, Sean A. Petterson, Miranda K. Litwak, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, New York, NY; Richard M. Heimann, Katherine Lubin Benson, Bruce W. Leppla, LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, San Francisco, CA; *Attorneys for Plaintiff Employees' Retirement System of Rhode Island.*

Christine M. Mackintosh, Vivek Upadhya, William G. Passannante II, GRANT & EISENHOFER P.A., Wilmington, DE; Thomas Curry, SAXENA WHITE P.A., Wilmington, DE; Ned Weinberger, LABATON KELLER SUCHAROW LLP, Wilmington, DE; OF COUNSEL: David J. Schwartz and David L. Wales, SAXENA WHITE P.A., White Plains, NY; Adam D. Warden, SAXENA WHITE P.A., Boca Raton, FL; Brian Schall, SCHALL LAW FIRM, Los Angeles, CA; John Vielandi and Joshua M. Glasser, LABATON KELLER SUCHAROW LLP, New York, NY; *Attorneys for Plaintiffs Cleveland Bakers and Teamsters Pension Fund, Daniel Hazen, and Michael Giampietro.*

David E. Ross and Garrett B. Moritz, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; OF COUNSEL: Boris Feldman, Doru Gavril, Rebecca Lockert, J. Mia Tsui, FRESHFIELDS US LLP, Redwood City, CA; *Attorneys for Defendants Kimbal Musk, Ira Ehrenpreis, James Murdoch, Robyn Denholm, Kathleen Wilson-Thompson, Joe Gebbia, JB Straubel, Larry Ellison, and Hiromichi (Hiro) Mizuno.*

Michael A. Barlow, Shannon M. Doughty, Hayden J. Driscoll, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, DE; OF COUNSEL: Alex B. Spiro, Christopher D. Kercher, Jonathan E. Feder, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, NY; *Attorneys for Defendant Elon Musk.*

John L. Reed, Ronald N. Brown, III, Caleb G. Johnson, Daniel P. Klusman, DLA PIPER LLP (US), Wilmington, DE; Rudolf Koch, Kevin M. Gallagher, Andrew L. Milam, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; OF COUNSEL: Brian T. Frawley, Matthew A. Schwartz, Michael T. Lemanski, SULLIVAN & CROMWELL LLP, New York, NY; *Attorneys for Nominal Defendant Tesla, Inc.*

**DAVID, V.C.**

In April 2024, Tesla, Inc. ("Tesla" or the "Company") announced that it would seek stockholder approval to convert from a Delaware corporation to a Texas corporation. At the time, Tesla's bylaws designated Delaware as the exclusive forum for derivative litigation brought on behalf of the Company. As part of its redomestication to Texas, Tesla proposed new bylaws designating Texas as the exclusive forum for derivative actions.

After Tesla announced its proposal to redomesticate and adopt a Texas forum selection bylaw, stockholders filed three derivative lawsuits in this Court, which have been consolidated or coordinated in the present action. Days—and in one instance, hours—after the lawsuits were filed, Tesla stockholders voted to approve the redomestication and adopt the Texas forum selection bylaw. On the present motions, the defendants ask the Court to enforce that bylaw and dismiss the actions in favor of a Texas forum.

The plaintiffs argue that the Court should enforce the prior Delaware forum selection bylaw that was in place when the actions were filed instead of the now-operative Texas forum selection bylaw. Although the plaintiffs advocate for an inflexible rule requiring the Court to assess proper venue based on the facts as they existed when the complaints were filed, courts sometimes look to later points in time when determining venue, such as when the defendant appears or at the time a movant seeks transfer. Courts in other jurisdictions have enforced forum selection bylaws

1

adopted after derivative lawsuits were filed.  And the unique facts of this case present a strong case for enforcement, since the Texas forum selection bylaw was publicly announced before these actions were initiated and became effective just days later, before the defendants appeared and any meaningful litigation occurred.

The plaintiffs argue that enforcing the Texas forum selection bylaw would violate two sections of the Delaware General Corporation Law.  For reasons explained below, it does not.  They also argue that enforcement would be unreasonable or unjust, including because Texas law is less favorable to stockholders.  I will not second-guess Tesla stockholders' chosen forum by purporting to weigh the advantages and disadvantages of Texas law and procedure relative to our own.  The owners of the corporation voted to require that derivative litigation be filed in a Texas forum.  On the present facts, it is not inequitable to enforce their decision.

The defendants' motions to dismiss are therefore granted.

## I.    BACKGROUND[1]

Tesla is a technology company that designs, develops, manufactures, and sells fully electric vehicles, solar energy generation systems, and energy storage products.

---

[1] Docket entries in *In re Tesla, Inc. Derivative Litigation*, C.A. No. 2024-0631 (Del. Ch.), are cited as "2024-0631 Dkt. __".  Docket entries in *Perry v. Musk*, C.A. No. 2024-0560 (Del. Ch.), are cited as "2024-0560 Dkt. __".  Docket entries in *Cleveland Bakers and Teamsters Pension Fund v. Musk*, 2024-0646 (Del. Ch.), are cited as "2024-0646 Dkt. __".

Verified S'holder Deriv. Compl. [hereinafter ERSRI Compl.] ¶ 28, 2024-0631 Dkt. 1. Tesla also offers maintenance, installation, operation, charging, insurance, financial, and other services related to its products. *Id*.

Michael Perry, Employees' Retirement System of Rhode Island ("ERSRI"), Cleveland Bakers and Teamsters Pension Fund ("Cleveland Bakers"), Daniel Hazen, and Michael Giampietro (collectively, "Plaintiffs") are Tesla stockholders. *Id.* ¶ 26; Verified Am. S'holder Deriv. Compl. [hereinafter Perry Compl.] ¶ 5, 2024-0560 Dkt. 55; Verified S'holder Deriv. Compl. [hereinafter CB Compl.] ¶¶ 14–16, 2024-0646 Dkt. 1.

On March 8, 2023, Perry served a demand on Tesla's board of directors to inspect Tesla's books and records pursuant to 8 *Del. C.* § 220. *See* Perry Compl. ¶ 2; Transmittal Aff. of Andrew L. Milam, Esq. in Supp. of Nominal Def. Tesla, Inc.'s Opening Br. in Supp. of its Mots. to Dismiss the Coordinated Verified S'holder Deriv. Compls. [hereinafter Milam Aff.], Ex. 7, 2024-0631 Dkt. 64. In connection with that demand, Perry signed a non-disclosure agreement (the "NDA") with the Company that stated:

> If [Perry] or [Perry]'s Counsel determines to assert any . . . derivative claims on behalf of the Company using, reflecting, or in any way based upon Confidential Information, [Perry] and [Perry]'s Counsel agree, consistent with Delaware law, to: (i) commence such action exclusively in the Court of Chancery of the State of Delaware . . . .

---

The following facts are taken from the complaints in those actions unless otherwise indicated.

Pl. Michael Perry's Answering Br. in Opp'n to Nominal Def. Tesla, Inc.'s Mot. to Dismiss the Verified Am. S'holder Deriv. Compl. [hereinafter Perry AB] at 3, 2024-0560 Dkt. 72; Transmittal Aff. of Lee Squitieri in Supp. of Pl.'s Answering Brs. in Opp'n to Defs.' Mots. to Dismiss [hereinafter Squitieri Aff.], Ex. A at 7, 2024-0560 Dkt. 72. At the time, Tesla's bylaws also included a forum selection provision designating Delaware courts as the exclusive forum for derivative actions brought on behalf of the Company (the "Delaware Forum Bylaw"). Transmittal Aff. of Seth T. Ford in Supp. of Pls.' Answering Br. in Opp'n to Nominal Def. Tesla, Inc.'s Mot. to Dismiss, Ex. H at Art. XI, 2024-0631 Dkt. 74.

On April 17, 2024, Tesla publicly announced in a preliminary proxy statement that it would seek stockholder approval to convert from a Delaware corporation to a Texas corporation (the "Redomestication"). Nominal Def. Tesla, Inc.'s Opening Br. in Supp. of its Mots. to Dismiss the Coordinated Verified S'holder Deriv. Compls. [hereinafter Tesla OB] at 12, 2024-0631 Dkt. 63; Milam Aff., Ex. 9 at 21–63. As part of the Redomestication, Tesla also sought stockholder approval to adopt bylaws designating Texas courts as the exclusive forum for derivative actions brought on behalf of the Company (the "Texas Forum Bylaw"):

> Unless the corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum for . . . any derivative action or proceeding brought on behalf of the corporation . . . shall be the Business Court in the Third Business Court Division ("Business Court") of the State of Texas (provided that if the Business Court

4

determines that it lacks jurisdiction, the United States District Court for the Western District of Texas, Austin Division (the "Federal Court") or, if the Federal Court lacks jurisdiction, the state district court of Travis County, Texas).

Milam Aff., Ex. 5 at C-27. Tesla's definitive proxy statement set a stockholder vote on the Redomestication for June 13, the date of Tesla's annual meeting. *Id.*

On May 24, Perry filed a lawsuit in this Court (the "Perry Action") captioned *Michael Perry v. Elon Musk, et al.*, C.A. No. 2024-0560 (Del. Ch.). The 61-page complaint initially filed in the Perry Action alleged that Tesla's Chief Executive Officer and director, Elon Musk, breached his fiduciary duties to the corporation by selling Tesla stock based on material nonpublic information, and that Tesla's directors breached their fiduciary duties by failing to maintain adequate internal controls related to insider trading. Verified S'holder Deriv. Compl. ¶¶ 151–65, 2024-0560 Dkt. 1.

On June 10, ERSRI filed a second lawsuit in this Court (the "ERSRI Action") captioned *Employees' Retirement System of Rhode Island v. Elon Musk, et al.*, C.A. No. 2024-0631 (Del. Ch.). The 250-page complaint in the ERSRI Action alleges that Musk breached his fiduciary duties by selling Tesla stock based on material nonpublic information, usurping a corporate opportunity by founding and investing in artificial intelligence company xAI, misappropriating corporate assets by hiring Tesla employees to work for Twitter and xAI, breaching Tesla's Code of Ethics, and committing other wrongdoing. ERSRI Compl. ¶¶ 347–401. It further alleges that

Tesla's directors breached their fiduciary duties by failing to implement and oversee a system to monitor compliance with Tesla's Code of Ethics and by failing to establish reliable reporting systems or controls for compliance with an SEC consent decree requiring preapproval for tweets regarding Musk's disposition of Tesla stock. *Id.* ¶¶ 402–37.

Three days later, on June 13, Cleveland Bakers, Hazen, and Giampietro filed a third lawsuit in this Court (the "Cleveland Bakers Action," and together with the Perry Action and the ERSRI Action, the "Actions") captioned *Cleveland Bakers and Teamsters Pension Fund, et al. v. Elon Musk, et al.*, C.A. No. 2024-0646 (Del. Ch.). The 76-page complaint in the Cleveland Bakers Action alleges that Musk breached his fiduciary duties by founding and operating xAI, hiring Tesla employees to work for xAI, diverting microchips from Tesla to Twitter (or "X") and xAI, and using Tesla's data to develop xAI's software and hardware. CB Compl. ¶¶ 138–44, 150–54. It further alleges that Tesla's directors breached their fiduciary duties by failing to exercise oversight over Musk's conduct. *Id.* ¶¶ 145–49.

Later the same day, June 13, 63% of Tesla's outstanding shares voted to approve the Redomestication and the Texas Forum Bylaw. Milam Aff., Ex. 12; *see also Ball v. Tesla, Inc.*, 2025 WL 696598, at *1 (Del. Ch. Mar. 3, 2025) ("63% of Tesla's outstanding shares voted in favor of the Redomestication Proposal.").

Plaintiffs served Defendants[2] in the Perry Action, ERSRI Action, and Cleveland Bakers Action on June 11, June 20, and June 24, respectively. 2024-0560 Dkt. 4; 2024-0631 Dkts. 3–4; 2024-0646 Dkts. 4–5. Defendants appeared in the Perry Action and ERSRI Action on June 25. 2024-0560 Dkt. 5; 2024-0631 Dkt. 7. Defendants were signatories to a scheduling stipulation submitted in the Cleveland Bakers Action on August 16 but formally appeared in that action on September 16. 2024-0646 Dkts. 11, 13.

Plaintiffs moved to consolidate the Actions on August 6. 2024-0560 Dkt. 18; 2024-0631 Dkt. 27; 2024-0646 Dkt. 9. On January 27, 2025, the Court entered an order consolidating the Cleveland Bakers Action with the ERSRI Action and coordinating those actions with the Perry Action. 2024-0560 Dkt. 44; 2024-0631 Dkt. 54; 2024-0646 Dkt. 35. On June 10, Perry filed an amended complaint in the Perry Action. Perry Compl., 2024-0560 Dkt. 55.

Defendants moved to dismiss the Actions on April 4 (the "Motions to Dismiss").[3] The Court heard combined oral argument on October 22. 2024-0631

---

[2] This Opinion refers to Elon Musk, Kimbal Musk, Robyn M. Denholm, Ira Ehrenpreis, Hiromichi Mizuno, Joe Gebbia, James Murdoch, Kathleen Wilson-Thompson, JB Straubel, Larry Ellison, and Tesla collectively as "Defendants."

[3] Briefing in the consolidated Actions concluded on July 17. *See* Tesla OB, 2024-0631 Dkt. 63; Opening Br. in Supp. of the Individual Defs.' Mot. to Dismiss the Verified S'holder Deriv. Compl., 2024-0631 Dkt. 65; Pls.' Opp'n to the Individual Defs.' Mot. to Dismiss the Verified S'holder Deriv. Compl., 2024-0631 Dkt. 73; Pls.' Answering Br. in Opp'n to Nominal Def. Tesla, Inc.'s Mot. to Dismiss [hereinafter PAB], 2024-0631 Dkt. 74; Nominal Def. Tesla, Inc.'s Reply Br. in Supp. of its Mot. to Dismiss the Verified S'holder Deriv.

Dkt. 92; 2024-0560 Dkt. 80. The Actions were reassigned to me on April 4, 2026. 2024-0631 Dkt. 108. After reviewing the parties' written submissions and a transcript of the October 22, 2025 oral argument, I have determined that additional submissions and argument are unnecessary.

## II. ANALYSIS

Defendants have moved to dismiss the Actions under Court of Chancery Rules 12(b)(1) for lack of subject matter jurisdiction, 12(b)(3) for improper venue, and 23.1 on demand futility grounds.

Defendants' threshold argument is that the Texas Forum Bylaw mandates dismissal in Delaware in favor of a Texas forum. To summarize the chronology: the Texas Forum Bylaw was publicly proposed with the Redomestication on April 17, 2024; the Perry Action, ERSRI Action, and Cleveland Bakers Action were filed on May 24, June 10, and June 13, respectively. The Texas Forum Bylaw was adopted

---

Compl. [hereinafter Tesla RB], 2024-0631 Dkt. 84; Reply Br. in Further Supp. of the Individual Defs.' Mot. to Dismiss the Verified S'holder Deriv. Compl., 2024-0631 Dkt. 85.

Defendants moved to dismiss the amended complaint in the Perry Action on June 25. Briefing in the Perry Action concluded on October 13. *See* Nominal Def. Tesla, Inc.'s Opening Br. in Supp. of its Mot. to Dismiss the Am. Compl., 2024-0560 Dkt. 66; Opening Br. in Supp. of the Individual Defs.' Mot. to Dismiss the Verified Am. S'holder Deriv. Compl., 2024-0560 Dkt. 67; Perry AB, 2024-0560 Dkt. 72; Nominal Def. Tesla, Inc.'s Reply Br. in Supp. of its Mot. to Dismiss the Am. Compl., 2024-0560 Dkt. 76; Reply Br. in Supp. of the Individual Defs.' Mot. to Dismiss the Verified Am. S'holder Deriv. Compl., 2024-0560 Dkt. 77.

8

on June 13, so by the time Defendants appeared in the Actions on June 25 and September 16, the Texas Forum Bylaw was in effect.

"The proper procedural rubric for addressing a motion to dismiss based on a forum selection clause is found under Rule 12(b)(3), improper venue." *Sylebra Cap. P'rs Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *9 (Del. Ch. Oct. 9, 2020) (quoting *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *4 (Del. Ch. July 2, 2018)). Forum selection provisions, including those contained in corporate bylaws, "are 'presumptively valid' and should be 'specifically' enforced unless the resisting party '[] clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching.'" *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) (alterations in original) (quoting *Cap. Gp. Cos., Inc. v. Armour*, 2004 WL 2521295, at *3 (Del. Ch. Nov. 3, 2004)); *see Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013) ("[T]his court will enforce . . . forum selection bylaws in the same way it enforces any other forum selection clause . . . .").

Plaintiffs raise three primary arguments to resist enforcement of the Texas Forum Bylaw. Despite those arguments, I conclude that the Actions should be dismissed under the Texas Forum Bylaw.

**A.** **Precedent Supports Enforcing The Texas Forum Bylaw Instead Of The Delaware Forum Bylaw That Was In Place When The Actions Were Filed.**

In the first instance, Plaintiffs urge the Court to enforce the Delaware Forum Bylaw instead of the Texas Forum Bylaw. PAB at 13–14. Though the Texas Forum Bylaw has superseded the Delaware Forum Bylaw, Plaintiffs contend that "venue must be determined based on the facts at the time of filing." *Id.* at 15 n.37 (quoting *Flowers Indus., Inc. v. F.T.C.*, 835 F.2d 775, 776 n.1, 778 (11th Cir. 1987)); *see also id.* at 13 (claiming that "Rule 12(b)(3) motions are decided based on considerations that prevailed at 'the time the complaint is filed'" (quoting *Scrum All., Inc. v. Scrum, Inc.*, 2021 WL 798310, at *3 (E.D. Tex. Feb. 26, 2021))).

Plaintiffs base this argument on an inapplicable federal statute, 28 U.S.C. § 1404(a), governing change of venue between federal district courts.[4] In federal court, "when a forum-selection clause designates a federal-court forum, most district courts . . . have concluded that the proper way to enforce the forum-selection clause is via transfer under § 1404(a)" rather than Rule 12(b)(3). *Pinnacle Interior Elements, Ltd. v. Panalpina, Inc.*, 2010 WL 445927, at *6 (N.D. Tex. Feb. 9, 2010). Section 1404(a) limits transfer "to those situations in which the transferee district is

---

[4] *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought* or to any district or division to which all parties have consented.") (emphasis added).

one in which the action might originally have been brought in terms of jurisdiction and venue." 5B *Wright & Miller's Federal Practice & Procedure* § 1352 (4th ed. 2026). Section 1404 does not apply, however, "when the selected forum is arbitration, state court, or a foreign court." *Id.*

For this reason, Plaintiffs' reliance on *Scrum Alliance* and *Flowers Industries* is misplaced. In *Scrum Alliance*, the plaintiff filed a lawsuit in Texas federal court in contravention of a contractual forum selection provision choosing Colorado as the exclusive forum. *Scrum All., Inc.*, 2021 WL 798310, at *1, *3–4. Four months after filing its complaint in Texas, the plaintiff sought to cure the improper venue by unilaterally exercising its contractual "right, in its sole discretion, 'at any time to modify, alter or update'" the forum selection provision to change the exclusive forum from Colorado only to both Colorado and Texas. *Id.* The court rejected that effort, explaining that "[f]ederal district courts in Texas have consistently held that 'venue is determined at the time a complaint is filed[,]'" and transferred the action under Section 1404(a) to Colorado federal court, *i.e.*, the forum where the action could have been brought at the time the complaint was filed. *Id.* at *5. Because *Scrum Alliance* applied a federal statute governing change of venue between federal courts, it has no application here. But in addition to that principal distinction, the facts here are materially different because Tesla, unlike the *Scrum Alliance* plaintiff, did not

11

exercise a unilateral right to alter its forum selection bylaw, nor did it do so months after the Actions were filed.

*Flowers Industries* does not support Plaintiffs' position either. The plaintiff in that case filed a lawsuit in Georgia federal court against a Delaware corporation in the process of reincorporating in Georgia. 835 F.2d at 776 n.1. A federal appellate court concluded that "venue was improper" in Georgia because the defendant was still a Delaware corporation when the case was filed, but it remanded to the district court to decide "whether the interests of justice" would nevertheless support a transfer. *Id.* at 778. In basing its venue analysis on the facts at the time of filing, *Flowers* too relied on authority interpreting Section 1404(a), which, again, does not apply here.

The remaining authority on which Plaintiffs rely does not support their position that the Court must determine venue based solely on the facts as they existed at the time the Actions were filed. The only Delaware case Plaintiffs cite, *Arteaga v. Bell Helicopter Textron, Inc.*, 2012 WL 5992810 (Del. Super. Ct. Nov. 30, 2012), did not hold that venue must be determined based on the facts at the time a complaint is filed. There, the Delaware Superior Court denied a motion to dismiss in favor of a Mexican forum. It concluded that Mexico was not "an available alternative forum" because a Mexican court would have dismissed the case for lack of jurisdiction

12

before the parties could consent to jurisdiction. *Id.* at \*3. That holding bears no relevance here.

Contrary to Plaintiffs' arguments, more relevant authority outside the context of the federal transfer statute recognizes that courts sometimes look to later points in time when determining venue, such as when the defendant appears or at the time a movant seeks transfer. *See, e.g.*, *Lockhead v. Weinstein*, 28 P.3d 1081, 1082 (Mont. 2001) ("Residence will be determined by the status of the parties and pleadings at the time of the complaint or *at the time the moving party appears* in the action.") (emphasis added); *Cliff v. Gleason*, 351 P.2d 394, 396 (Colo. 1960) ("The right to a change of venue depends on the conditions existing *at the time the demand for the change is made*, and must be determined by conditions *at the time the party claiming the right first appears* in the action.") (emphasis added) (citing 92 C.J.S. Venue § 185a); *see also Fresenius Kabi USA, LLC v. CUSTOpharm, Inc.*, 2021 WL 849635, at \*2 (D. Colo. Jan. 26, 2021) (rejecting an argument that "venue should be determined at the time of the complaint" where, after a complaint was filed in Colorado federal court, a corporation "converted its status from a domestic [Colorado] to a foreign [Texas] corporation"), *R. & R. adopted*, 2021 WL 651022 (D. Colo. Feb. 19, 2021).

Consistent with that approach, courts in other jurisdictions applying Delaware law have enforced forum selection bylaws adopted after derivative litigation was

13

filed. Under settled Delaware law, a forum selection bylaw may apply retroactively to cover claims arising from conduct that occurred prior to the bylaw's adoption. "Whether or not the alleged wrongdoing comes before or after the adoption of a forum selection bylaw is irrelevant in determining the reasonableness or overall enforceability of the bylaw." *Sylebra*, 2020 WL 5989473, at *11; *see id.* ("[A] stockholder in a Delaware corporation gives consent to be bound by current and future bylaws when it buys stock."). A stockholder does not have a vested right to litigate in a particular forum, even for claims arising from past conduct, because the contractual relationship "among the directors, officers, and stockholders formed within the statutory framework of the DGCL" is, "by design, flexible and subject to change in the manner that the DGCL spells out and that investors know about when they purchase stock in a Delaware corporation." *Mack v. Rev Worldwide, Inc.*, 2020 WL 7774604, at *8 (Del. Ch. Dec. 30, 2020) (quoting *Boilermakers*, 73 A.3d at 939). As a result, a "stockholder should hold the 'reasonable expectation' that the board could adopt such a bylaw at any time, subject to an as-applied challenge." *Id.* at *13; *see also ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 560 (Del. 2014) (holding that as a "statutory matter," amendments to a corporation's governing documents are binding on stockholders who "agreed to be bound by rules 'that may be adopted and/or amended from time to time' by the board" (citation omitted)).

14

In at least three prior decisions, courts in other jurisdictions have drawn on these principles to enforce forum selection bylaws adopted after a lawsuit was filed. In *Sanchez v. Robbins*, 2024 WL 2952546 (Cal. Ct. App. June 12, 2024), a stockholder in a California corporation filed derivative claims in California state court.[5] *Sanchez*, 2024 WL 2952546, at *1. The following month, the corporation's board of directors voted to reincorporate in Delaware. *Id.* Two months after that, the corporation's stockholders—who were "informed that one element of the new Delaware corporation's bylaws would be an 'exclusive forum provision'" designating Delaware as the exclusive forum for litigating derivative actions— "overwhelmingly approved" the reincorporation. *Id.* Thereafter, the corporation argued that its new forum selection bylaw required that the plaintiff's claims be litigated in Delaware. *Id.* The California court agreed, explaining that although "defendants adopted the forum selection bylaw only after plaintiff sued[,]" the timing did "not make defendants' forum selection bylaw unenforceable as a matter of law." *Id.* at *3. The court reasoned that "[u]nder Delaware law, a unilaterally adopted forum selection bylaw can be applied retroactively" and the plaintiff did "not persuasively explain why that reasoning cannot also apply to litigation filed

---

[5] Plaintiffs call out that *Sanchez* is "unpublished." PAB at 17. Although Rule 8.1115 of the California Rules of Court restricts citation of unpublished opinions, "[t]his is not a California court, and this Court does not have a similar rule." *In re Scottish RE (U.S.), Inc.*, 350 A.3d 645, 677 n.105 (Del. Ch. 2025) (citing Ct. Ch. R. 7(e)).

before the bylaw was adopted." *Id.* In reaching this conclusion, the court rejected the plaintiff's argument that "nothing 'would stop a company from unilaterally adopting a forum bylaw any time it is sued in a forum that it does not like,' or 'from litigating a lawsuit in the forum of its choosing and then, if it is losing, unilaterally adopting a forum bylaw and moving to dismiss on that basis[,]'" explaining that these "concerns ignore the discretion vested in trial courts case-by-case to deny a motion to dismiss if applying a forum selection clause in a specific case would be 'unfair or unreasonable.'"[6] *Sanchez*, 2024 WL 2952546, at *4 (citations omitted).

Other courts to decide this issue have reached the same conclusion. In *In re Cerence Stockholder Derivative Action*, 2024 WL 5187699 (D. Mass. Dec. 20, 2024), a Massachusetts federal court enforced a forum selection bylaw adopted after derivative litigation was filed, noting that "courts frequently enforce forum selection clauses pursuant to bylaws that were not in effect when litigation was filed." *Id.* at *3 n.4. In *Goldstein v. Neuman*, 2021 WL 5317198 (Cal. Ct. App. Nov. 16, 2021),

---

[6] Defendants agree that it may be inappropriate to enforce a later-adopted forum selection bylaw under different facts, particularly if the parties and the Court have invested time and resources litigating an action. *See* Tr. of 10-22-2025 Oral Arg. on Defs.' Mot. to Dismiss [hereinafter Arg. Tr.] at 19:9–19, 2024-0631 Dkt. 93. Venue arguments must be raised in an answer or on a motion to dismiss under Rule 12, so in most cases a late-stage venue motion would not succeed. *Id.* at 19:20–24; *see Sloan v. Segal*, 2008 WL 81513, at *2 (Del. Ch. Jan. 3, 2008) ("[I]mproper venue [is an] affirmative defense[] that [is] waived if [it is] not asserted in either a timely Rule 12 motion or, if a timely Rule 12 motion is not filed, in the first responsive pleading."). Here, the Texas Forum Bylaw was adopted before Defendants appeared in the Actions, so *no* litigation occurred before improper forum arguments were raised.

another California state court enforced a forum selection bylaw adopted after a derivative action was filed, finding the timing of adoption was "not determinative" as there existed no "authority holding that a newly enacted forum selection bylaw cannot be applied to pending litigation as a matter of law." *Id.* at \*3. Plaintiffs attempt to distinguish these decisions on the basis that the forum selection bylaws at issue were adopted before amended complaints were filed, *see* PAB at 18, but the courts' analyses do not turn on that distinction; nor is it consistent with Plaintiffs' position that a court must determine venue at the time an action is filed.[7]

I am convinced that under the facts of this case, the Court should enforce the operative Texas Forum Bylaw, subject to an as-applied challenge. As explained above, the Court is not constrained to assess venue as of the date the Actions were filed, and even if it were, the state of play at that time was that the Delaware Forum Bylaw remained subject to amendment (and such an amendment had, in fact, been proposed). Other courts faced with the same issue have applied Delaware law to enforce a later-adopted forum selection bylaw. And the argument for enforcement here is even stronger than in those other cases because the Texas Forum Bylaw was publicly announced before litigation was initiated and became effective just days later, before Defendants entered appearances such that no meaningful litigation

---

[7] Even if this were a persuasive distinction (and it is not), it would not apply to the Perry Action because the complaint in that action was amended *after* the Texas Forum Bylaw was adopted.

17

occurred between filing and the bylaw's adoption. If any circumstance supports "allowing a later bylaw to apply to preexisting litigation," these facts do.[8] Arg. Tr. at 20:1–3.

I therefore conclude that the Court should enforce the Texas Forum Bylaw unless it would be unreasonable or unjust to do so.

### B. The Texas Forum Bylaw Does Not Violate Section 266(e).

Plaintiffs argue that enforcing the Texas Forum Bylaw to dismiss the Actions would violate Section 266 of the Delaware General Corporation Law, which governs the conversion of a Delaware corporation to a foreign jurisdiction. Section 266(e) states:

> The conversion of a corporation out of the State of Delaware in accordance with this section and the resulting cessation of its existence as a corporation of this State pursuant to a certificate of conversion to non-Delaware entity ***shall not be deemed to affect any obligations or liabilities of the corporation*** incurred prior to such conversion or the personal liability of any person incurred prior to such conversion, ***nor shall it be deemed to affect the choice of law*** applicable to the corporation with respect to matters arising prior to such conversion.

---

[8] Citing the U.S. Supreme Court's decision in *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991), Plaintiffs argue that "forum selection clauses are reasonable because 'establishing *ex ante* the dispute resolution forum . . . dispel[s] confusion as to where suits may be brought and defended, thereby sparing litigants time and expense and conserving judicial resources.'" PAB at 15. Generally speaking, that is true, but I am unpersuaded that the potential for confusion or expense should preclude the Court from considering a later-adopted forum bylaw under the narrow circumstances here—where plans to adopt a forum selection bylaw were publicly announced before the lawsuits were filed and the bylaw was approved by a stockholder vote just days after the suits, before any litigation activity occurred.

18

8 *Del. C.* § 266(e) (emphasis added).

Plaintiffs make two—in my view, unpersuasive—arguments under Section 266(e). They first contend that enforcing the Texas Forum Bylaw here would impermissibly "affect" Tesla's "obligation" to litigate the Actions in Delaware as required under the Delaware Forum Bylaw.[9] This argument fails because Plaintiffs never had any vested right or obligation to litigate in a particular forum. "Our corporate law has long rejected the so-called 'vested rights' doctrine," the notion that a corporation's governing documents cannot be amended in a manner that diminishes or divests pre-existing stockholder rights. *Boilermakers*, 73 A.3d at 955; *see also City of Providence v. First Citizens BancShares, Inc.*, 99 A.3d 229, 241 (Del. Ch. 2014) (rejecting a forum bylaw challenge that was "simply a dressed-up version of the 'vested right' doctrine"), *superseded on other grounds by statute*, 8

---

[9] *See* PAB at 20 ("Tesla . . . incurred the obligation to bring internal corporate claims against its Directors (or to participate as a nominal defendant in such an action) in Delaware, prior to conversion.").

Separately, Perry also argues that the Texas Forum Bylaw does not apply to the Perry Action because the Texas Forum Bylaw chooses Texas as the exclusive forum for derivative litigation "[u]nless the corporation consents in writing to the selection of an alternative forum," and the NDA selects an alternative forum. Perry AB at 5–6. Under the NDA, *Perry and his counsel* agreed to "commence" derivative litigation "exclusively in the Court of Chancery." Squitieri Aff., Ex. A at 7. The provision imposes an obligation on Perry and his counsel for the benefit of Tesla; by its plain language, it does not impose any corresponding obligation on the Company, which remained free to waive its right to insist on a Delaware forum, including by moving to dismiss as it has done here. *See Naples Ctr. for Dermatology & Cosm. Surgery, PA v. Trisan*, 2025 WL 1276207, at *5 (Del. Ch. May 2, 2025) (finding a party waived its rights under a forum selection provision through litigation conduct).

*Del. C.* § 115. "[U]nder Delaware law, where a corporation's articles or bylaws 'put all on notice that the by-laws may be amended at any time, no vested rights can arise that would contractually prohibit an amendment.'" *Boilermakers*, 73 A.3d at 955 (quoting *Kidsco Inc. v. Dinsmore*, 674 A.2d 483, 492 (Del. Ch. 1995), *aff'd and remanded*, 670 A.2d 1338 (Del. 1995) (TABLE)). Although the Delaware Forum Bylaw previously required derivative claims to be filed in Delaware, any "obligation" to litigate in Delaware always remained subject to change. And Plaintiffs' argument that they "perfected" their right to litigate in Delaware by filing the Actions fails because Plaintiffs' right to litigate in this forum remained subject to review on a Rule 12 motion.[10] *See* Ct. Ch. R. 12(b)(3).

---

[10] Plaintiffs cite *Kidsco Inc. v. Dinsmore* for the proposition that "a stockholder's rights under a bylaw may be protected against abrogation by such amendment when the stockholder 'perfect[s] their right' by meeting the requirements of the bylaw before amendment took place." PAB at 25 (quoting *Kidsco*, 674 A.2d at 493). In *Kidsco*, a stockholder reacting to a merger announcement launched a competing tender offer and called for a special meeting to replace directors with its own nominees. 674 A.2d at 486–87. The board responded by amending the company's bylaws to extend the minimum time to call a special meeting so that any meeting would occur after the stockholder vote on the merger. *Id.* at 488. The stockholder argued that it "had an enforceable contract right to proceed under the then existing by-law, and the directors lacked any power to amend it." *Id.* at 492. The Court explained that the "'vested right' premise" of this argument "[wa]s wrong." *Id.* It then found that *even if* "a vested right to proceed under the original by-laws might arise in some circumstances, no such right arose" there because the stockholder did not "perfect[] [its] right to demand a meeting as of that date." *Id.* at 493. Nothing in *Kidsco*'s analysis suggests that filing a complaint is sufficient to "perfect" a "right" under a forum selection bylaw; again, *Kidsco* held that Plaintiffs' "vested rights" argument is "wrong." *Id.* at 492. Moreover, filing a complaint does not "perfect" any right under a forum selection bylaw because a complaint remains subject to dismissal on venue grounds when the defendants appear in the action.

20

Second, Plaintiffs argue that enforcing the Texas Forum Bylaw would run afoul of Section 266(e) and Section 115. Section 266(e) states that a conversion will not "affect the choice of law applicable to the corporation with respect to matters arising prior to such conversion." 8 *Del. C.* § 266(e). The Texas Forum Bylaw does not change the choice-of-law analysis; it "merely regulates 'where stockholders may file suit.'" *City of Providence*, 99 A.3d at 241 (quoting *Boilermakers*, 73 A.3d at 952). But Plaintiffs say that if Delaware law applies, then under Section 115,[11] Tesla could not adopt a provision in its bylaws that prohibits bringing internal corporate claims in Delaware. PAB at 23 (citing 8 *Del. C.* § 115). This argument also misses the mark. Regardless of what substantive law governs Plaintiffs' derivative claims,[12] "Section 115 does not apply here" because that statute governs Delaware corporations and Tesla "*was not incorporated in Delaware* when it adopted the [Texas Forum] Bylaw." *Sylebra*, 2020 WL 5989473, at *10 n.101 (emphasis in original).

---

[11] *See* 8 *Del. C.* § 115(a) ("The certificate of incorporation or the bylaws may require, consistent with applicable jurisdictional requirements, that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State, and *no provision of the certificate of incorporation or the bylaws may prohibit bringing such claims in the courts of this State*.") (emphasis added).

[12] Tesla concedes that "Delaware law applies to the merits of Plaintiffs' pre-[R]edomestication claims." Tesla RB at 17; *see also* Tesla OB at 32 ("By the plain text of the statute, the redomestication of a Delaware corporation into a corporation of another state does not affect the substantive law under which the liability of the corporation, or individual directors or officers of that corporation, are governed for claims challenging fiduciary conduct before redomestication.").

21

Accordingly, Section 266 does not provide a basis to avoid the Texas Forum Bylaw.

## C. Plaintiffs Have Not Shown That The Texas Forum Bylaw Is Unreasonable Or Unjust As Applied.

Finally, Plaintiffs argue that even if the Texas Forum Bylaw is otherwise applicable, it is unreasonable or unjust "as applied" and should not be enforced. PAB at 27.

"Courts should assess the reasonableness of a forum selection clause on a case-by-case basis." *Ingres*, 8 A.3d at 1146. "To escape the reach of the [Texas Forum] Bylaw on grounds that it is unreasonable or unjust, [Plaintiffs] 'bear[] a heavy burden' to demonstrate that enforcement here would 'place [them] at an unfair disadvantage' or 'otherwise deny [them their] day in court.'" *Sylebra*, 2020 WL 5989473, at *11 (quoting *Cap. Gp.*, 2004 WL 2521295, at *6).

Plaintiffs do not clear this bar. They assert that the Texas Forum Bylaw resulted from breaches of fiduciary duty because Defendants "(1) ma[de] materially misleading statements to solicit stockholder approval of [the Redomestication] and Texas [Forum] Bylaw and (2) approv[ed] and recommend[ed] a transaction that gave themselves non-ratable benefits while reducing stockholders' litigation rights." PAB at 27. According to Plaintiffs, Defendants "misled stockholders into voting in favor of [Redomestication], which was a condition precedent to Tesla's adoption of the Texas [Forum] Bylaw." *Id.* at 4. As support, Plaintiffs identify a number of

22

purportedly misleading statements made in connection with the Redomestication concerning this Court's past rulings and stockholder rights under Delaware and Texas law. *See id.* at 28–36.

Plaintiffs cannot undermine enforcement of the Texas Forum Bylaw by challenging the Redomestication. A party "cannot escape a valid forum selection clause . . . by arguing that the underlying contract was invalid for a reason unrelated to the forum selection . . . clause itself." *See Nat'l Indus. Gp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 380 (Del. 2013); *see also, e.g.*, *Mack*, 2020 WL 7774604, at \*12 (rejecting the argument that a forum selection provision should not be enforced because the agreements in which they appeared were allegedly "wrongfully procured"); *Sylebra*, 2020 WL 5989473, at \*12 n.117 (rejecting the argument that enforcement of a forum selection bylaw would be unreasonable because it was "adopted via a misleading proxy" and in furtherance of an illicit scheme, explaining that "[i]f ever this argument were to carry any persuasive force, that time would have been before the stockholder vote on the [r]eincorporation [m]erger"). Plaintiffs attack the Redomestication, but they do not argue that Tesla's stockholders were misled about the effect of the Texas Forum Bylaw in requiring derivative litigation to be brought in Texas rather than Delaware courts.[13]

---

[13] Perry argues that the Company's disclosures support an estoppel argument, pointing to language explaining that the Texas Forum Bylaw would apply after the Redomestication,

23

Entwined with their disclosure claims, Plaintiffs argue that dismissal under the Texas Forum Bylaw would cause substantial prejudice because "their only option will be to file their lawsuit in Texas, where Tesla will argue for application of . . . less favorable rules" than would apply in Delaware. PAB at 37. Despite their criticisms of Texas law, Plaintiffs fail to "rais[e] a legitimate question regarding the integrity or competency of the [Texas] courts to provide [the Plaintiffs] '[their] day in court.'" *Sylebra*, 2020 WL 5989473, at \*12 (quoting *Cap. Gp.*, 2004 WL 2521295, at \*6). I am loath to second-guess Tesla stockholders' chosen forum by purporting to weigh the advantages and disadvantages of Texas law and procedure relative to our own. "[C]ourts are ill-equipped to quantify the costs and benefits of one state's corporate governance regime over another's" and attempting to do so "risks intruding on the value judgments of state legislators and directors" as well as stockholders. *Maffei v. Palkon*, 339 A.3d 705, 743–44 (Del. 2025).

Delaware law "requires courts to give as much effect as possible to forum-selection clauses, and to only deny enforcement of them to the limited extent necessary to avoid some fundamentally inequitable result or a result contrary to positive law." *Salzberg v. Sciabacucchi*, 227 A.3d 102, 132 (Del. 2020) (footnote and internal quotation marks omitted). Tesla's stockholders, "the ultimate beneficial

Perry AB at 7–8, but nothing in these disclosures can reasonably be read as a commitment not to rely on the Texas Forum Bylaw after it was adopted.

owners of the corporate assets, including litigation assets," voted to approve the Texas Forum Bylaw, under which derivative litigation must be filed in a Texas court. *Quadrant Structured Prods. Comp. v. Vertin*, 115 A.3d 535, 550 (Del. Ch. 2015). On the present facts, it is not inequitable to uphold our state's "values of flexibility and private ordering" by enforcing a decision made by the corporation's owners on where to pursue their litigation assets. *Maffei*, 339 A.3d at 744.

## III. CONCLUSION

For the reasons explained above, the Motions to Dismiss are GRANTED.